DECISION AND JOURNAL ENTRY
{¶ 1} Appellants/Cross-Appellees, Walter and Louise Calame (collectively "the Calames"), appeal from the judgment of the Wayne County Court of Common Pleas, Probate Division. This Court affirms.
 I {¶ 2} This case revolves around a contest to several documents, consisting of the will, trusts, and a quit-claim deed that Blanche G. Calame executed before her death on January 30, 2005. Although Blanche originally executed a will that devised equal shares of her estate to each of her four children, Blanche later executed documents that would convey the vast majority of her estate to one of her sons, Walter Calame. Blanche also appointed Walter power of attorney ("POA") and removed her son Jay E. Calame as the nominated executor of her estate. Blanche further named Lois Treece, a paralegal at the law firm that had prepared her will and trust, as the successor trustee to the trust that she executed in 1989 and restated in 1992. *Page 2 
 {¶ 3} After Blanche died, Treece filed an application to probate Blanche's May 23, 1992 will and an application for authority to administer her estate. Three of Blanche's four children, Jay E. Calame, Pauline Gable, and Donna Mae Maibach (collectively "the siblings"), also filed an application for authority to administer the estate. After viewing Blanche's purported will, the siblings filed suit against Treece and the Calames. The siblings argued that Blanche's 1992 will, 1989 quit-claim deed, and 1989 and 1992 trust declarations were all the product of undue influence and that the Calames were unjustly enriched by the property transfers made under the aforementioned documents. The siblings also sought a declaratory judgment, asking the court to remove Treece as the trustee of Blanche's Trust, to invalidate all of the aforementioned documents, and to order that all of Blanche's property be returned to her estate.
 {¶ 4} On June 8, 2007, Walter filed a motion for summary judgment, which relied upon the siblings' depositions. The siblings filed a motion to strike their deposition transcripts in response, arguing that Walter failed to comply with Civ. R. 30(E) because he had not given the siblings an opportunity to correct and sign their transcribed depositions before filing them. The trial court granted the siblings' motion on July 9, 2007, struck their depositions for purposes of summary judgment, and denied Walter's motion for summary judgment, finding that it relied entirely upon the unauthenticated transcripts. The court later indicated, however, that it would permit Walter to rely upon the depositions for cross-examination purposes at trial as the siblings had an opportunity to review and correct their transcribed depositions before trial.
 {¶ 5} The matter proceeded to a jury trial on July 23, 2007. The siblings sought to invalidate the will, trusts, and the land deed that Blanche entered into after 1988 under either of two theories: forgery or undue influence. At the end of trial, the court directed a verdict in the Calames' favor on the issue of whether the 1992 will and trust were subject to forgery. *Page 3 
Consequently, as to the 1992 will and trust, the siblings submitted their claim to the jury solely upon the theory of undue influence. The jury returned its verdict in favor of the siblings, finding that Blanche's 1989 trust and deed and 1992 will and trust were invalid. The court entered judgment on the jury's verdict on August 8, 2007, invalidating all of the aforementioned documents and ordering that all of the property bequeathed therein be returned to Blanche's estate. The court also revoked Treece's status as the executor of the estate, an appointment made pursuant to Blanche's 1992 will, and appointed Blanche's daughter, Donna Maibach, as executrix in her place.
 {¶ 6} Subsequently, Treece and the Calames filed motions for a new trial. The court denied their respective motions on September 13, 2007.
 {¶ 7} On October 9, 2007, the Calames filed their notice of appeal, raising nine assignments of error for our review. On October 16, 2007, the siblings filed their notice of a cross-appeal, raising one cross-assignment of error for our review.
 II Assignment of Error Number One "THE LOWER COURT ERRED BY ACCEPTING THE JURY VERDICT AND ENTERING JUDGMENT FOR APPELLEES WHEN THE ANSWERS TO JURY INTERROGATORIES WERE IRRECONCILABLY INCONSISTENT."
 Assignment of Error Number Two "THE LOWER COURT ERRED BY DENYING THE APPELLANTS' MOTION FOR NEW TRIAL AND JUDGMENT NOTWITHSTANDING THE VERDICT."
 {¶ 8} In their first and second assignments of error, the Calames argue that the trial court erred in accepting the jury's verdict and in failing to grant their motion for judgment notwithstanding the verdict ("JNOV"), or in the alternative for a new trial, on the basis that the *Page 4 
jury returned inconsistent interrogatories. Specifically, they argue that the trial court erred in failing to exercise one of the remedies set forth in Civ. R. 49(B). We disagree.
 {¶ 9} After a court enters judgment on a jury's verdict, a party may file a JNOV to have the judgment set aside on grounds other than the weight of the evidence. See Civ. R. 50(B). This Court reviews a trial court's grant or denial of a JNOV de novo. Williams v. Spitzer AutoWorld Amherst, Inc., 9th Dist. No. 07CA009098, 2008-Ohio-1467, at¶ 9, citing Osler v. Lorain (1986), 28 Ohio St.3d 345, 347. "JNOV is proper if upon viewing the evidence in a light most favorable to the non-moving party and presuming any doubt to favor the nonmoving party reasonable minds could come to but one conclusion, that being in favor of the moving party." Williams at ¶ 9, citing Civ. R. 50(B).
 {¶ 10} Civ. R. 49(B) provides, in relevant part, as follows:
 "When one or more of the answers is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial."
Civ. R. 49(B) authorizes the trial court to fashion a remedy upon the determination that the jury's interrogatories conflict with the general verdict because "[t]he overall goal is to have the jury return a general verdict and interrogatory answers that complement that general verdict."Colvin v. Abbey's Restaurant, Inc. (1999), 85 Ohio St.3d 535, 538. An appellant bears the burden of demonstrating irreconcilability. Barr v.Ohio Edison Co. (Feb. 17, 1995), 9th Dist. No. 16629, at *3.
 {¶ 11} The jury ruled in favor of the siblings on all counts, concluding that Blanche's 1989 trust and quit-claim deed and 1992 will and trust were all invalid. The jurors answered the interrogatories accompanying their general verdict forms as follows: *Page 5 
 "1. Do you find that Walter Calame and/or Louise Calame exercised undue influence over Blanche Calame in regard to the Will dated May 23, 1992?
 "[ANSWER]: Yes.
 "2. Do you find that Walter Calame and/or Louise Calame exerted undue influence over Blanche Calame in regard to the Restatement of Trust dated May 23, 1992?
 "[ANSWER]: Yes.
 "3. Do you find that Blanche Calame did not sign the document purporting to be her Declaration of Trust dated September 8, 1989?
 "[ANSWER]: Yes.
 "4. Do you find that Walter Calame and/or Louise Calame exerted undue influence over Blanche Calame in regard to the Declaration of Trust dated September 8, 1989?
 "[ANSWER]: Yes.
 "5. Do you find that Blanche Calame did not sign the document purporting to be a Quit-Claim Deed conveying her farm into the Trust dated September 8, 1989?
 "[ANSWER]: Yes.
 "6. Do you find that Walter Calame and/or Louise Calame exerted undue influence over Blanche Calame in regard to the Quit-Claim Deed conveying her farm to the Trust dated September 8, 1989?
 "[ANSWER]: Yes."
The Calames concede that the interrogatories are consistent with the general verdict awarding judgment to the siblings. They argue, however, that the interrogatories are inconsistent amongst themselves because they indicate that the jury found the September 8, 1989 trust and quit-claim deed to be the product of both undue influence and forgery.
 {¶ 12} Interrogatories three and five clearly indicate that the jurors found Blanche did not sign the 1989 trust and deed. The absence of Blanche's actual signature, however, is not synonymous with a finding that her signature was forged. None of the interrogatories asked the jurors to specifically determine whether a forgery occurred. Forgery requires a person to have *Page 6 
purposely signed another's writing without the other's authority. See R.C. 2913.31(A). The jury could have determined that Blanche did not sign her own name, but was unduly influenced to give another person the authority to do so on her behalf. This would comport with the jury's determination that Blanche did not sign the 1989 documents, but also was unduly influenced "in regard to" them. Moreover, apart from the broad wording of the undue influence interrogatories, the interrogatories did not include any instructions that the jurors should pass over certain questions in light of their answers to others (i.e. to skip ahead to interrogatory five if they answered "yes" to interrogatory three). Based on the language of the interrogatories submitted, the jury's responses, and the fact that the interrogatories were consistent with the general verdict, we cannot say that the trial court erred in refusing to grant the Calames' JNOV.
 {¶ 13} We also cannot conclude that the trial court erred in refusing to grant the Calames' motion for a new trial. Apart from filing a JNOV, a party also may file a motion for a new trial "on all or part of the issues" at trial pursuant to Civ. R. 59(A). Depending upon the basis of the motion for a new trial, this Court will review a trial court's decision to grant or deny the motion under either a de novo or an abuse of discretion standard of review. Rohde v. Farmer (1970),23 Ohio St.2d 82, paragraphs one and two of the syllabus (indicating that a de novo standard of review applies when the basis for a new trial motion rests solely upon a question of law while an abuse of discretion standard applies to motions based upon a matter requiring the court's discretion). The Calames, however, failed to specify the grounds upon which their motion for a new trial rested at both the trial and the appellate level. Their argument on appeal consists solely of a blanket assertion that the trial court should have granted their motion for the same reasons that it should have granted their JNOV. We have already determined that the trial court did not err in denying the Calames' JNOV. This Court will not formulate additional *Page 7 
arguments on the Calames' behalf to further test the trial court's decision to deny the Calames' motion for a new trial. See Cardone v.Cardone (May 6, 1998), 9th Dist. No. 18349, at *8 ("If an argument exists that can support this assignment of error, it is not this court's duty to root it out."). The Calames' first and second assignments of error are overruled.
 Assignment of Error Number Six "THE LOWER COURT ERRED IN DENYING THE APPELLANTS' MOTIONS FOR DIRECTED VERDICT ON THE UNDUE INFLUENCE CLAIM."
 Assignment of Error Number Seven "THE JURY'S VERDICT ON THE UNDUE INFLUENCE CLAIM WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 14} In their sixth assignment of error, the Calames argue that the trial court erred in denying their motion for a directed verdict. In their seventh assignment of error, the Calames argue that the jury's verdict is against the manifest weight of the evidence. Specifically, they argue that there was not competent, credible evidence that Blanche entered into her 1989 trust and quit-claim deed and 1992 will and trust as a result of undue influence. We disagree.
 {¶ 15} This Court applies the standard of review set forth in C.E.Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus, when analyzing a manifest weight argument in the context of a civil jury trial. Huntington Natl. Bank v. Chappell, 9th Dist. No. 06CA008979, 2007-Ohio-4344, at ¶ 4, citing State v. Wilson, 113 Ohio St.3d 382,2007-Ohio-2202, at ¶ 24. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Wilson at ¶ 24, quoting C.E. Morris at syllabus. When applying the aforementioned standard, a reviewing court "has an obligation to presume that the findings of the trier of fact are correct." Wilson at ¶ 24, quoting Seasons Coal Co., Inc. v.Cleveland (1984), 10 Ohio St.3d 77, *Page 8 
80-81. This is because the trier of fact is in the best position "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal, 10 Ohio St.3d at 80. While "[a] finding of an error in law is a legitimate ground for reversal, a difference of opinion on credibility of witnesses and evidence is not." Id. at 81. Thus, in a civil manifest weight of the evidence analysis a reviewing court may not simply "reweigh the evidence and substitute
its judgment for that of the [trier of fact]." Wilson at ¶ 40. CompareState v. Thompkins (1997), 78 Ohio St.3d 380, 387 (describing the reviewing court's role in analyzing a criminal manifest weight of the evidence argument as that of the "thirteenth juror").
 {¶ 16} "Undue influence must be proven by clear and convincing evidence." Abate v. Abate (Mar. 29, 2000), 9th Dist. No. 19560, at *5. To prevail on a claim of undue influence, a plaintiff must prove the following: (1) a testator's susceptibility; (2) another's opportunity to improperly influence the testator; (3) the actual or attempted exertion of that improper influence; and (4) the result showing the effect of the influence. West v. Henry (1962), 173 Ohio St. 498, 510-11. The mere presence of influence is not sufficient to demonstrate undue influence.Augsbury v. Hickerson, 9th Dist. No. 23301, 2007-Ohio-364, at ¶ 11. Rather, the influence must be such that it subjugates the testator's will and results in the procurement of a will or other document that favors the undue influencer. Id. See, also, Bacon v. Donnet, 9th Dist. No. 21201, 2003-Ohio-1301, at ¶ 23-42 (applying the doctrine of undue influence to a revocable trust). "In any will-contest action, the person who can give the best evidence of influence is dead. Therefore, most evidence will be circumstantial, leaving the factfinder to draw permissible inferences." Redman v. Watch Tower Bible Tract Soc. ofPennsylvania (1994), 69 Ohio St.3d 98, 102. *Page 9 
 {¶ 17} Blanche executed wills in 1986 and 1988. Both wills left certain specific bequests to some of Blanche's children, but otherwise equally divided the entirety of Blanche's remaining property among her four children. While the 1986 will nominated Blanche's son, Jay, as her executor, however, the 1988 will nominated her other son, Walter. Blanch also made Walter her attorney-in-fact through a durable unlimited general POA on July 29, 1988. None of the aforementioned items were in dispute at trial.
 {¶ 18} On September 8, 1989, Blanche executed a declaration of trust, which set aside three large tracts of her property for Walter and named Walter's wife, Louise, as the successor trustee. That same day, Blanche also executed a quit-claim deed for the land referenced in the trust. On May 23, 1992, Blanche executed a restatement of her trust and a will, which devised all of her property to the trust. Pursuant to the 1992 trust, each of Blanche's children who survived her death would receive $5,000, but Walter would receive the entirety of her remaining estate. The 1992 will and trust named Lois Treece, a paralegal at the law firm that had prepared the documents, as executrix and successor trustee respectively. The jury determined that Blanche entered into her 1989 trust and quit-claim deed and 1992 will and trust because of the Calames' undue influence.
 {¶ 19} The first element of undue influence revolves around the susceptibility of the testator. West, 173 Ohio St. at 510-11. Pauline Gable, Blanche's daughter, testified that she helped care for her mother after her father died in 1986. Pauline testified that Blanche suffered from failing vision and was admitted to the hospital in both 1988 and 1989 for congestive heart failure. Pauline stated that her mother stopped driving in 1989. After that point, Blanche exclusively relied upon others to bring her the items that she needed and to help around the house. Blanche's in-home nurse, Sharon Koppes, confirmed that Blanche's poor eyesight *Page 10 
essentially confined her to her home because Blanche was afraid of falling down outside. Roger Feather, a farmer who leased Blanche's land, also testified that he only spoke with Blanche at her home because she would go no further than her own back porch. Consequently, the record contains competent, credible evidence that Blanche suffered from physical infirmities that severely limited her interaction with the outside world and made her dependent upon the few individuals who cared for her. We cannot say that the jury erred in determining that Blanche was a susceptible testator.
 {¶ 20} The second element of undue influence revolves around the opportunity of the alleged influencers to exercise their undue influence upon the testator. Id. As we have already noted, several witnesses described the cloistered lifestyle to which Blanche subjected herself after her health declined. The siblings all testified that the Calames spent significant time with Blanche. As Walter and his children helped out on the family farm, he spent virtually every day on Blanche's property and always had one of his two vehicles parked near the house. Although Pauline testified that she continued to visit Blanche several times a week until Blanche's death, she stated that she stopped bringing food for Blanche because Walter and Louise always wanted to inspect it before giving it to Blanche. Pauline also stated that, while she initially helped Blanche with her financial matters, she stopped doing so in 1988 because of Walter's involvement. As Blanche gave Walter a POA in 1988, Walter had an even greater opportunity to claim an interest in Blanche's personal and financial affairs during and beyond this time period. Accordingly, the record contains competent, credible evidence that the Calames had frequent and often exclusive access to Blanche and numerous opportunities to influence her from as early as 1988. *Page 11 
 {¶ 21} The third element of undue influence concerns the actual or attempted exertion of the improper influence. West,173 Ohio St. at 510-11. Walter testified that he knew nothing of Blanche's intention to devise her estate to him until she died. According to Walter, he served as Blanche's POA and helped to care for her for approximately seventeen years without expecting or suggesting that he get anything in return. Walter admitted, however, that Blanche gave him sole access to her checkbook after he took charge of her finances. Walter could not explain how Blanche, without access to a checkbook or other cash flow, was able to compensate an attorney for the drafting of her trusts and will without Walter's knowledge. Nor did Walter indicate how Blanche managed to have her attorney and paralegal out to her house during the preparation and signing of her trusts and will without the Calames' knowledge. Despite Walter's assertion that he wanted nothing in return for helping his mother, Walter admitted that he extracted $66,000 from Blanche's checking account over a five year period in spite of Blanche's single and solitary lifestyle. He further admitted that nineteen of those checks were written for the personal "labor" that he had expended on the farm property.
 {¶ 22} Louise Calame testified that she believed that Blanche had signed her 1989 trust and quit-claim deed and that the sole reason that Blanche's signature looked slightly odd on the documents was because Blanche was "shaky" when she signed them. Yet, Michael Robertson, an expert document examiner, testified that the 1989 documents contained "key variations" in the writing, which indicated that Blanche had never signed them. Robertson explained that he compared Blanche's alleged signature on the 1989 documents with multiple examples of her known signature. Robertson acknowledged that a person's handwriting often deteriorates with the onset of sickness and age, but opined that these factors had no bearing in this instance because someone else had signed Blanche's name on the 1989 documents. Thus, Robertson's *Page 12 
expert testimony directly conflicted with Louise's assertion that Blanche had signed the 1989 quit-claim deed and the 1989 trust; the same document that named Louise as successor trustee.
 {¶ 23} Finally, several witnesses testified about the overall change in Blanche's mannerisms and attitude after her husband died and the Calames began to care for her. Pauline testified that Blanche's personality began to change in 1988 and that Blanche often wrung her hands and felt uncomfortable talking when Pauline came to visit. Pauline stated that whenever she asked her mother questions, Blanche would simply defer to Walter, stating, "I don't know. Ask Walt." Roger Feather, a neighbor who leased Blanche's farm, testified that Blanche "hermitized herself even though she was quite an "outdoorsy person" before 1988. Feather also testified that he asked Blanche on two occasions if she might be interested in selling him the farm, but that Blanche indicated she would have to discuss it with Walter on both occasions. Donna testified that her mother always seemed nervous and upset when Donna spoke with her in addition to the fact that Blanche refused to go outside. Only Walter, his family members, and people that he employed, such as Blanche's nurse, testified that Blanche continued to exercise a strong will until her death and that the Calames never exerted any undue influence over her. Accordingly, while the record is not wholly devoid of evidence to the contrary, we cannot find that the jury erred in determining that the Calames exerted improper influence over Blanche because the record contains some competent, credible evidence of that influence.
 {¶ 24} The final element of undue influence requires the plaintiff to produce tangible evidence of the result of the alleged undue influence.West, 173 Ohio St. at 510-11. Here, the siblings produced the 1989 and 1992 documents, consisting of a trust, restatement of that trust, will, and quit-claim deed. Collectively, these documents conveyed the entirety of Blanche's estate to Walter with the exception of $5,000 for each of the siblings. At the time of Blanche's *Page 13 
death, the farm constituting the majority of her estate was valued "at roughly a million dollars." This extremely disparate distribution between the children varies completely from the almost equal distribution that Blanche provided for in her 1988 will. We find these documents to be competent, credible evidence of the result of the Calames' undue influence upon Blanche.
 {¶ 25} Based on our review of the record, we must conclude that the jury's verdict, finding that Blanche's 1989 trust and quit-claim deed and 1992 will and trust were all the product of the Calames' undue influence, is not against the manifest weight of the evidence. As this Court noted in Holiday Properties Acquisition Corp. v. Lowrie, 9th Dist. Nos. 21055 21133, 2003-Ohio-1136, at ¶ 47-49, a finding that a judgment is not against the manifest weight also amounts to a determination that the trial court did not err in denying a motion for a directed verdict on that same issue. As such, the Calames' sixth and seventh assignments of error are overruled.
 Assignment of Error Number Three "THE LOWER COURT ERRED IN FAILING TO SET A HEARING DATE IN CONNECTION WITH THE APPELLANTS' MOTION FOR SUMMARY JUDGMENT."
 Assignment of Error Number Four "THE LOWER COURT ERRED IN STRIKING THE DEPOSITIONS OF THE PLAINTIFFS FILED AS SUPPORT FOR APPELLANT[S'] MOTION FOR SUMMARY JUDGMENT."
 Assignment of Error Number Five "THE LOWER COURT ERRED IN DENYING APPELLANTS' MOTION FOR SUMMARY JUDGMENT."
 {¶ 26} In their third assignment of error, the Calames argue that the trial court erred by not setting a hearing date with regard to their motion for summary judgment. In their fourth assignment of error, the Calames argue that the trial court erred in striking the siblings' *Page 14 
depositions from the Calames motion for summary judgment on the basis that the siblings did not have an opportunity to review the depositions before their filing. In their fifth assignment of error, the Calames argue that the trial court erred in denying their motion for summary judgment, which challenged the siblings' ability to demonstrate a genuine issue of material fact with regard to their claim of undue influence.
 {¶ 27} The Ohio Supreme Court has held that:
 "Any error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made." Continental Ins. Co. v. Whittington (1994), 71 Ohio St.3d 150, syllabus.
A determination that a summary judgment motion is moot also extends to the items accompanying the motion. First Merit Bank, N.A. v.Wilson, 9th Dist. No. 23363, 2007-Ohio-3239, at ¶ 23, quotingContinental Ins. Co., 71 Ohio St.3d at 156. That is, if a summary judgment motion is moot, "[w]e need not evaluate the evidentiary materials supporting and opposing the [party's] summary judgment motion on [the] issue." Wilson at ¶ 23, quoting Continental Ins. Co.,71 Ohio St.3d at 156. Our analysis focuses solely on the issue of whether genuine issues of fact were raised at trial. Wilson at ¶ 24.
 {¶ 28} We have already determined that the jury properly awarded judgment to the siblings. The Calames' motion for summary judgment raised the exact issue determined by the jury in their verdict: undue influence. Furthermore, the trial court permitted the Calames to use the depositions that were stricken for purposes of their summary judgment motion during the trial to cross-examine the sibilings. Thus, even if the trial court erred in striking the depositions in the summary judgment phase that error was harmless. This Court finds that the trial below raised genuine issues of material fact, which the jury resolved through its verdict in favor of the *Page 15 
siblings. In light of our determination that the siblings received a favorable judgment based on the same material issues raised in the Calames' motion for summary judgment, the Calames' third, fourth, and fifth assignments of error are moot, and we decline to address them.
 Assignment of Error Number Eight "THE LOWER COURT ERRED IN REVOKING THE LETTERS OF AUTHORITY APPOINTING LOIS TREECE AS EXECUTOR."
 Assignment of Error Number Nine "THE LOWER COURT ERRED IN APPOINTING DONNA M. MAIBACH FIDUCIARY."
 {¶ 29} In their eighth and ninth assignments of error, the Calames argue that the lower court erred in revoking Treece's letters of authority and appointing Donna, Blanche's daughter, in her place. As the sole support for their argument, the Calames' aver that "[i]f the jury verdict is set aside, these orders must also be reversed and remanded for rehearing based upon the results of this appeal." We have already declined to set aside the jury's verdict. As such, the Calames' eighth and ninth assignments of error are overruled.
 Cross-Assignment of Error "THE LOWER COURT ERRED BY FAILING TO INCLUDE PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 2 BURDEN (UNDUE INFLUENCE) WITHIN THE JURY INSTRUCTIONS PRESENTED TO THE JURY[.]"
 {¶ 30} In their cross-assignment of error, the siblings argue that the lower court erred by refusing to instruct the jury as to the existence of a presumption that Walter exerted undue influence upon Blanche as a consequence of his POA status. As we have already found that the jury's finding of undue influence is not against the manifest weight of the evidence, this cross-assignment of error is moot, and we decline to address it. See App. R. 12(A)(1)(c). *Page 16 
 III {¶ 31} The Calames' first, second, sixth, seventh, eighth, and ninth assignments of error are overruled. Their third, fourth, and fifth assignments of error are moot. Finally, the siblings' sole cross-assignment of error is overruled. The judgment of the Wayne County Court of Common Pleas, Probate Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellants/Cross-Appellees.
 CARR, P. J., MOORE, J. CONCUR *Page 1