DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant, Satin Ride Equine Transport, Inc. ("Satin Ride"), appeals from the judgment of the Medina County Court of Common Pleas, which overruled its objections and adopted the magistrate's decision in favor of Plaintiff-Appellee, HF Transportation, Inc. ("HF"). This Court affirms.
 I {¶ 2} This lawsuit involves the tumultuous relationship between Satin Ride, its sole shareholder A. Pascal Mahvi, HF, and its sole shareholder Fred Crutchfield. Beginning in the late 1990s, Satin Ride purchased 13 pieces of *Page 2 
equipment consisting of different trucks and trailers. Satin Ride financed the purchase of the vehicles through loans with Huntington National Bank ("HNB") and various other lenders. After falling behind on payments, however, Satin Ride discontinued its use of the equipment and directed Crutchfield to find a purchaser.
 {¶ 3} While the parties disagree as to the exact role that Crutchfield occupied at Satin Ride, the record reflects that Crutchfield at least acted as a consultant for the company prior to its decision to sell its equipment. Thus, when Crutchfield offered to purchase the equipment for his own company, Mahvi readily agreed. HF[1] and Satin Ride entered into a contract for the purchase and sale of the 13 pieces of equipment on May 1, 2001. Subsequently, the parties entered into two additional contracts on January 1, 2003. The two additional contracts collectively covered the May 1, 2001 agreement between the parties, but split the pieces of equipment into two groups. The first contract ("HNB Contract") covered the equipment financed through HNB, which consisted of the following: (1) one 1997 KW 900L tractor; (2) two 1998 KW T2000 tractors; and (3) one 1999 6-Horse Freightliner. The second contract covered the remaining nine pieces of equipment, which were financed through various lenders. All of the contracts between the parties also included an acknowledgement that Satin Ride owed Crutchfield $21,000 for his consultant work at Satin Ride. *Page 3 
 {¶ 4} HF did not have enough capital to pay outright for Satin Ride's equipment, so HF agreed to take over Satin Ride's payments to its lenders. Unfortunately, the parties' contractual performances were plagued with inconsistencies. HF made payments directly to Satin Ride for a period of time, but began submitting payments directly to HNB after learning that Satin Ride had not been forwarding the payments. Meanwhile, HF frequently submitted its payments well after they were due and paid less than the full amount specified on HNB's monthly invoices. Despite these problems, neither party brought suit against the other for breach of contract.
 {¶ 5} Amidst falling profits in July and November of 2002, HF decided to sell two of the pieces of equipment financed by lenders other than HNB.[2] Satin Ride agreed to relinquish the title to the two pieces of equipment based on HF's promise that it would apply the $50,000 received from each sale to the HNB loan. Although it applied the money as promised, HF did not inform Satin Ride that the pieces of equipment actually sold for $80,000 a piece and that HF kept the $30,000 excess from each vehicle.
 {¶ 6} HF eventually fell behind on its loan payments to HNB, and on May 13, 2003, HNB notified Satin Ride that it had defaulted on its loan *Page 4 
obligations. HNB swept $8,192.83 from Mahvi's personal account to satisfy the overdue payments because he had personally guaranteed Satin Ride's loans. That same day, Satin Ride notified HF of the default and gave it five days to cure. When HF failed to respond, Satin Ride's attorneys sent another notice of default on May 19, 2003, threatening replevin and the institution of legal proceedings. On May 20, 2003, HF sold one of the 1998 KW T2000 tractors and applied the proceeds to the HNB loan. However, HF did not reimburse Mahvi for the money HNB swept from his personal account.
 {¶ 7} The parties eventually reached an impasse in their performances because they heavily disagreed about their contractual obligations. HF stopped making payments to HNB because it believed that it had paid Satin Ride all that it owed under the contract and because Satin Ride refused to release the titles to the equipment. On December 13, 2003, HNB notified Satin Ride that it was preparing to initiate legal proceedings against Satin Ride because it had defaulted again on its loan obligations. None of the other lenders involved ever took legal action against either HF or Satin Ride because HF continued to make payments to these lenders. In fact, HF eventually paid off all of the non-HNB loans except for one, and HF was current on that loan at the time of trial.
 {¶ 8} On February 17, 2004, HF filed suit against Satin Ride and HNB seeking a declaratory judgment to determine the parties' rights. HF also sought judgment against Satin Ride for specific monetary sums and for transfer of the *Page 5 
titles to the pieces of equipment that Satin Ride was wrongfully withholding. Satin Ride counterclaimed for breach of contract and replevin for the ten pieces of equipment remaining with HF. On April 12, 2004, the trial court filed an agreed journal entry in which the parties agreed to sell the 1999 6-Horse Freightliner in order to satisfy the remaining obligations on the HNB loan. The equipment sold for $40,000, and HNB placed the excess profits from the sale ($16,167) in escrow with the law firm representing Satin Ride. On November 10, 2004, the parties voluntarily dismissed HNB from the lawsuit with prejudice.
 {¶ 9} On January 5, 2005, the parties went to trial before a magistrate. The magistrate issued her decision on April 24, 2006, ordering the following: (1) that HF was entitled to judgment in the amount of $21,000 for the consultancy fees owed to Crutchfield; (2) that Satin Ride must relinquish titles to HF, the beneficial owner of the remaining 1998 KW T2000 tractor, the 1997 KW 900L tractor, and three other pieces of equipment from various lenders that HF had paid off; (3) that HF was entitled to $16,167 being held in escrow; and (4) that Satin Ride's counterclaim be dismissed with prejudice. Satin Ride entered timely objections to the magistrate's decision to which HF failed to respond. On June 15, 2006, the trial court overruled Satin Ride's objections and adopted the magistrate's decision.
 {¶ 10} Satin Ride timely appealed to this Court. On February 8, 2007, we stayed the appeal due to a notice of bankruptcy. However, HF subsequently *Page 6 
filed a motion to reinstate the appeal, explaining that Crutchfield had filed for bankruptcy personally, but that HF had not. On April 2, 2007, we granted HF's motion. Satin Ride's appeal is now properly before this Court. We rearrange and combine several of the assignments of error to facilitate our review.
 II Assignment of Error Two "THE TRIAL COURT ABUSED ITS DISCRETION BY ADOPTING THE MAGISTRATE'S DECISION WHICH AWARDED DAMAGES IN THE AMOUNT OF $21,000 TO APPELLEE FOR BACK CONSULTANT FEES OF ITS SOLE SHAREHOLDER, FRED CRUTCHFIELD."
 {¶ 11} In its second assignment of error, Satin Ride argues that the trial court erred in awarding $21,000 to HF for Crutchfield's consultancy fees. Specifically, Satin Ride contends that the assignment provision of the HNB Contract prohibited Crutchfield from assigning his right to payment to HF without the prior written consent of Satin Ride. We disagree.
 {¶ 12} The decision to modify, affirm, or reverse a magistrate's decision lies within the discretion of the trial court. Kalail v. DaveWalter, Inc., 9th Dist. No. 22817, 2006-Ohio-157, at ¶ 5. This Court will not reverse a trial court's decision on appeal absent an abuse of discretion. Id. An abuse of discretion suggests more than a mere error in judgment; it indicates that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. *Page 7 
 {¶ 13} Satin Ride argues that Crutchfield's purported assignment to HF is
"void and meaningless" because Crutchfield never obtained Satin Ride's written consent to assign his right to receive the $21,000 in consultancy fees to HF. Satin Ride does not deny that it owes Crutchfield the $21,000, but it argues that Crutchfield improperly assigned the right to receive this payment. However, Crutchfield was not a party to the contract between Satin Ride and HF. Although Crutchfield signed the contract, he only did so on behalf of his company HF. Satin Ride makes no attempt to explain why a non-party to its contract would be bound to adhere to the assignment conditions set forth in the contract. See, e.g., Preferred Capital, Inc. v. Sturgil, 9th Dist. No. 21787, 2004-Ohio-4453, at ¶ 11-19 (discussing contractual liability where individual is the guarantor for the principal party to a contract). Since he was not a party to the HNB Contract, Crutchfield was free to assign his right to receive payment to HF. Accordingly, the trial court did not abuse its discretion in ordering Satin Ride to pay the consultancy fees it owed Crutchfield directly to HF. Satin Ride's second assignment of error is overruled.
 Assignment of Error One "THE TRIAL COURT ABUSED ITS DISCRETION BY ADOPTING THE MAGISTRATE'S DECISION WHICH DECLARED APPELLEE THE RIGHTFUL OWNER OF THE VEHICLES BECAUSE THE EVIDENCE ONLY PROVES THAT APPELLEE MATERIALLY BREACHED THE HNB AGREEMENT WHEN IT FAILED TO MAKE THE REQUIRED TIMELY LOAN PAYMENTS, AND, THEREFORE, SATIN RIDE IS THE RIGHTFUL OWNER OF THE VEHICLES." *Page 8 
 Assignment of Error Three "THE TRIAL COURT ABUSED ITS DISCRETION BY ADOPTING THE MAGISTRATE'S DECISION WHICH DISMISSED SATIN RIDE'S BREACH OF CONTRACT CLAIM BECAUSE THE UNDISPUTED TESTIMONY AND EVIDENCE PROVES THAT SATIN RIDE PERFORMED ITS OBLIGATIONS UNDER THE HNB AGREEMENT, APPELLEE MATERIALLY BREACHED THE TERMS OF THE HNB AGREEMENT, AND SATIN RIDE HAS BEEN DAMAGED."
 {¶ 14} In its first assignment of error, Satin Ride argues that the trial court erred in adopting the magistrate's decision because HF materially breached the HNB Contract and should not have been declared the rightful owner of the remaining pieces of equipment. In its third assignment of error, Satin Ride argues that the trial court erred in dismissing its breach of contract claim.
 {¶ 15} As we set forth previously, the decision to modify, affirm, or reverse a magistrate's decision lies within the discretion of the trial court. Kalail at ¶ 5. We will not reverse that decision absent an abuse of discretion. Id. An abuse of discretion suggests more than a mere error in judgment; it indicates that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore,5 Ohio St.3d at 219.
 {¶ 16} Initially, we note that this appeal only concerns the trial court's decisions with respect to the HNB Contract. The HNB Contract covered four pieces of Satin Ride's equipment: (1) one 1997 KW 900L tractor; (2) two 1998 KW T2000 tractors; and (3) one 1999 6-Horse Freightliner. Accordingly, we *Page 9 
review the trial court's decision solely as it relates to this equipment and the HNB Contract.
 {¶ 17} The trial court determined that HF breached the HNB Contract, but that the breach was not material. The trial court reasoned that the timeliness of HF's payments was not a material term to the HNB Contract because of the parties' history of making late payments and their continued performance. However, the trial court failed to recognize that HF stopped paying HNB altogether before the loan with HNB was satisfied. The record reflects that Crutchfield believed he could somehow use other, unrelated loans that Satin Ride owed him to offset the payments to HNB. For instance, Crutchfield loaned Satin Ride $5,313 in 2001 to bring Satin Ride current on its loans with its lenders. That loan was not a part of the HNB Contract. However, Crutchfield factored that loan in when calculating his total payments to HNB. He argues that HF was entitled to stop paying on the HNB loan because in the aggregate he actually overpaid for the pieces of equipment.
 {¶ 18} To set forth a claim for breach of contract, a complaining party must prove the following elements by a preponderance of the evidence: (1) that a contract existed; (2) that the complaining party fulfilled its contractual obligations; (3) that the opposing party failed to fulfill its obligations; and (4) that the complaining party incurred damages as a result of this failure. Farmers State Bank v.Followay, 9th Dist. No. 07CA0011, 2007-Ohio-6399, at ¶ 13, citing *Page 10 Lawrence v. Lorain Cty. Community College (1998), 127 Ohio App.3d 546,548-49. It is an elementary rule of contracts that, upon a material breach of a contract by one party thereto, the other contracting party may, at his option, elect to rescind the contract, or continue it in force and sue for damages for the breach. Dickson v. Wilson (Nov. 27, 1934), 9th Dist. No. 2442, at *1. However, even in the event of a material breach, a complaining party will not prevail if it cannot demonstrate the existence of actual damages. See Telxon Corp. v. SmartMedia of Delaware, Inc., 9th Dist. Nos. 22098 22099, 2005-Ohio-4931, at ¶ 56.
 {¶ 19} The HNB Contract provided, in relevant part:
 "[T]his Lease shall * * * continue in effect until [HF] has reimbursed to [Satin Ride] all rent, fees and other monetary obligations due to [HNB] under the Existing Agreements, including any late fees, penalties and back amounts accruing under the Existing Agreements[.]"
The HNB Contract did not permit HF to offset the obligations due to HNB in any way or give HF the option to unilaterally stop paying on Satin Ride's loans. Even if Satin Ride owed Crutchfield or HF money, that obligation was separate from HF's obligation under the HNB Contract. Crutchfield incorrectly determined that HF had paid all that it owed under the contract. Even if the timeliness of HF's payments was immaterial to the HNB Contract, the complete stoppage of payment was not. The record evinces that a contract existed and that HF failed to fulfill its contractual obligations. See Farmers State Bank at ¶ 13. Therefore, the trial court abused its discretion in agreeing that there was no *Page 11 
material breach on HF's part. We now turn to the issue of whether Satin Ride proved actual damages stemming from HF's breach.
 {¶ 20} The record reflects that both parties agreed at trial that Satin Ride entered into the HNB Contract for the purpose of relieving it from its loan obligations with HNB. The parties did not intend for the HNB Contract to result in a profit for Satin Ride. Before the beginning of trial, the HNB Contract was fully satisfied out of the proceeds from HF's sale of one of the 1998 KW T2000 tractors on May 20, 2003 and HNB's repossession and sale of the 1999 6-Horse Freightliner pursuant to the parties' April 12, 2004 stipulation. Because the HNB loans were satisfied during the litigation, the magistrate and trial court found that Satin Ride did not incur any damages as a result of HF's failure to pay on the HNB Contract. On appeal, Satin Ride claims that the court erred in determining that it did not suffer any damages because it could have profited from the sale of the equipment that HF sold and that HNB repossessed and sold.
 {¶ 21} First, Satin Ride points out that HF wrongfully kept $60,000 in proceeds from the sale of two pieces of equipment in July and November of 2002. Yet, this equipment was not part of the HNB Contract. It was part of the second contract that the parties signed on January 1, 2003, which covered the nine pieces of equipment that Satin Ride had financed through lenders other than HNB. This appeal only involves the HNB Contract, not the second contract that the parties entered into. Accordingly, any profit that HF made on the two pieces of *Page 12 
equipment it sold in July and November of 2002 is irrelevant to Satin Ride's damages in this case.
 {¶ 22} Second, Satin Ride argues that it might have been able to profit from the sale of the equipment under the HNB Contract if the court had allowed it to repossess the equipment, sell it, apply the proceeds to the HNB loan, and keep the remaining proceeds for itself. This Court will not speculate as to the amount of proceeds that Satin Ride might have realized if it had taken a different course of action in this case. See Agarwal v. Mulligan, 9th Dist. No. 22021, 2004-Ohio-4574, at ¶ 9 (stating "[u]nder Ohio law * * * a party cannot recover purely speculative damages"). Furthermore, Satin Ride acknowledged that the reason it entered into the HNB Contract was to satisfy its loans with HNB. The record reflects that Satin Ride's loans with HNB were satisfied through HF's and HNB's sale of certain pieces of the equipment. While Satin Ride may not prefer the method by which the HNB loans were satisfied, it cannot now claim that the underlying purpose for the HNB Contract remains unfulfilled. Satin Ride failed to set forth any evidence of actual damages because it received the benefit of its bargain with HF. Thus, the magistrate and trial court correctly determined that Satin Ride did not suffer any actual damages.
 {¶ 23} The record reflects that Mahvi did suffer actual damages as a result of HF's breach of contract. Mahvi personally guaranteed all of Satin Ride's loans on its equipment. When HF fell behind in its payments to HNB in May of *Page 13 
2003, HNB swept $8,192.83 from Mahvi's personal account to apply to the loan. However, Mahvi never filed suit against HF on his own behalf. Furthermore, HF only brought its lawsuit against Satin Ride, an incorporated entity. Thus, we are precluded from affording relief to Mahvi, a non-party to the suit between HF and Satin Ride. As we previously stated, Satin Ride failed to prove damages as a result of HF's breach. Therefore, Satin Ride's first and third assignments of error are without merit.
 Assignment of Error Four
"THE TRIAL COURT ABUSED ITS DISCRETION BY ADOPTING THE MAGISTRATE'S DECISION WHICH FAILED TO COMPARE THE TRANSCRIPT TO THE MAGISTRATE'S INCORRECT RECITATION OF THE TESTIMONY AND PERMITTED A 15-MONTH DELAY BETWEEN THE CONCLUSION OF TRIAL AND THE ENTERING OF A DECISION."
 {¶ 24} In its fourth assignment of error, Satin Ride argues that the trial court erred in adopting the magistrate's decision because the decision contained factual errors. Satin Ride claims that it was prejudiced as a result of the fifteen month delay between trial and the magistrate's decision because the magistrate did not recall the evidence correctly and the trial court relied on that incorrect recollection. Further, Satin Ride claims that the fifteen month delay prejudiced it because the remaining equipment depreciated in value during the delay.
 {¶ 25} Because this Court undertook an independent review of the record and the transcripts in this case, Satin Ride cannot demonstrate any prejudice as a *Page 14 
result of any errors in the magistrate's and/or trial court's findings. Additionally, we have already determined that Satin Ride did not suffer any actual damages as a result of HF's breach. See discussion, supra. Any depreciation in the value of the equipment listed in the HNB Contract has no bearing on our finding that Satin Ride's loan obligations with HNB have been satisfied. Satin Ride has not demonstrated any prejudice resulting from the magistrate's delay. Consequently, Satin Ride's fourth assignment of error is overruled.
 III {¶ 26} Satin Ride's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). *Page 15 
The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
SLABY, P. J. DICKINSON, J. CONCUR.
[1] HF originally went by the name of Ridgewood, Inc. Thus, the contracts between the two parties refer to Ridgewood, Inc. rather than HF.
[2] The parties appear to have ignored this sale when entering into the new contracts on January 1, 2003. Although HF sold these 2 pieces of equipment before the parties entered into the new contracts, the parties continued to list these items in the new contracts for their purchase. *Page 1