[Cite as *Schottenstein Zox & Dunn Co., L.P.A. v. Reineke*, 2011-Ohio-6201.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

SCHOTTENSTEIN, ZOX & DUNN CO.,
L.P.A.

      Appellee

    v.

LELAND M. REINEKE aka
MATT REINEKE

      Appellant

C.A. No.     10CA0138-M


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    08CIV1032

DECISION AND JOURNAL ENTRY

Dated: December 5, 2011

---

WHITMORE, Judge.

**{¶1}** Defendant-Appellant, Leland M. Reineke, appeals from the judgment of the Medina County Court of Common Pleas Court. This Court affirms.

I

**{¶2}** On May 30, 2008, Plaintiff-Appellee, Schottenstein, Zox, & Dunn Co., L.P.A. ("Schottenstein"), filed a complaint against Reineke to collect money owed on invoices for attorney fees and expenses in the amount of $37,542.61, plus interest. A jury trial was held on June 1 and June 2, 2010. At the conclusion of Schottenstein's case, Reineke moved to dismiss on the grounds of insufficient evidence. The court treated the motion to dismiss as a motion for a directed verdict and denied it. At the conclusion of all the evidence, the trial court dismissed count two of the complaint, a claim based on quantum meruit, leaving for the jury's consideration counts one and three, claims on an account and contract, respectively.

{¶3} The jury returned a verdict in favor of Schottenstein. On June 8, 2010, the trial court entered judgment in the amount of $39,706 with interest. On July 22, 2010, Reineke filed a motion for judgment notwithstanding the verdict ("JNOV") and, in the alternative, for a new trial. On July 23, 2010, the trial court held a hearing on the motion, and on July 29, 2010, placed an entry on the docket denying the motion in toto. Reineke did not receive notice of the court's July 29, 2010 entry. On November 23, 2010, the trial court placed another entry on the docket once again denying Reineke's motion and reaffirming the jury's verdict. The entry was signed by counsel for both parties. Reineke filed his notice of appeal on December 27, 2010.

{¶4} The complaint in this case arises from a domestic relations matter. In February 2003, Reineke signed an engagement letter authorizing Schottenstein attorney Robert K. Danzinger, a partner with the firm, to represent him with respect to the drafting of a separation agreement. The engagement letter specified an hourly rate of $210.00 and a retaining fee of $2,500. The separation agreement was never utilized because Reineke's wife, Juliana Reineke, filed a divorce action against him in the Medina County Domestic Relations Court. That case was dismissed on February 7, 2005. Directly following the dismissal of the Medina County case, Schottenstein filed a divorce action on Reineke's behalf against Juliana Reineke in Ashland County, which was also subsequently dismissed. On or about the same day as the Ashland County filing, Juliana Reineke initiated a divorce action against Reineke in the state of Michigan, where she was residing with the couple's children. Schottenstein's representation of Reineke in these matters continued until July 2005, when he terminated Schottenstein's services. The fees at issue here pertain to Schottenstein's invoices for legal fees and expenses incurred from February 2005 through July 2005.

{¶5}    Reineke now appeals from the November 23, 2010 judgment entry denying the motion for JNOV and new trial, and raises a single assignment of error for our review.

II

Assignment of Error

"THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY OVERRULING THE APPELLANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND FOR NEW TRIAL WHERE THE APPELLEE DID NOT PRODUCE SUFFICIENT EVIDENCE AT TRIAL TO RECOVER DAMAGES FOR ATTORNEY FEES."

{¶6}    As an introductory matter, this Court will address Schottenstein's contention that Reineke's notice of appeal was not timely filed within the requirements of App.R. 4(A) and that it should be dismissed.  A judgment entry denying Reineke's motion for JNOV and new trial was entered on the trial court's docket on July 29, 2010.   Appended to Reineke's notice of appeal is a certified copy of the trial court docket which demonstrates that Reineke was not served with the July 29, 2010 entry.  Because the trial court failed to properly serve Reineke with its decision and entry, the time for his appeal did not begin to run until he was notified of the judgment.  See Civ.R. 58(B); App.R. 4(A)(stating that the required notice of appeal must be filed "within thirty days of the later of entry of the judgment or order appealed or *** service of the notice of judgment and its entry if service is not made on the party within the three day period in Rule 58(B) of the Ohio Rules of Civil Procedure").  Because the trial court's docket does not disclose that Reineke was properly notified of the July 29, 2010 judgment against him, we cannot conclude that his notice of appeal was filed untimely.  As a result, Schottenstein's contention that the appeal must be dismissed for failure to comply with the requirements of App.R. 4(A) is unpersuasive.

{¶7}    We turn now to the merits of Reineke's assignment of error.  Reineke contends that the trial court erred in denying his motion for JNOV and new trial because Schottenstein

failed to meet its burden of proof with respect to: (1) the reasonableness, value, or necessity of the fees, specifically, the issue of legal fees customarily charged in the locality for similar services; (2) the existence and terms of a contract and breach thereof; and (3) an action on an open account. For the reasons that follow, we disagree.

{¶8}  With respect to appellate review of a trial court's decision on a motion for JNOV, this Court has held that:

> "After a court enters judgment on a jury's verdict, a party may file a JNOV to have the judgment set aside on grounds other than the weight of the evidence. See Civ.R. 50(B).  As with an appeal from a court's ruling on a directed verdict, this Court reviews a trial court's grant or denial of a JNOV de novo.  *Williams v. Spitzer Auto World Amherst, Inc.,* 9th Dist. No. 07CA009098, 2008-Ohio-467, at ¶9. JNOV is proper if upon viewing the evidence in a light most favorable to the non-moving party and presuming any doubt to favor the nonmoving party reasonable minds could come to but one conclusion, that being in favor of the moving party.  *Williams* at ¶9, citing Civ.R. 50(B). If reasonable minds could reach different conclusions, the motion must be denied. *Garcea v. Woodhull*, 9th Dist. No. 01CA0069, 2002-Ohio-2437, at ¶10." *Waugh v. Chakonas*, 9th Dist. Nos. 25417 & 25480, 2011-Ohio-2764, at ¶7.

{¶9}  Our standard of review regarding the trial court's decision on a motion for a new trial depends upon the grounds of the motion.  "Depending upon the basis of the motion for a new trial, this Court will review a trial court's decision to grant or deny the motion under either a de novo or an abuse of discretion standard of review." *Calame v. Treece*, 9th Dist. No. 07CA0073, 2008-Ohio-4997, at ¶13, citing *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, paragraphs one and two of the syllabus.  "[W]hen the basis of the motion involves a question of law, the de novo standard of review applies, and when the basis of the motion involves the determination of an issue left to the trial court's discretion, the abuse of discretion standard applies." *Dragway 42, L.L.C. v. Kokosing Constr. Co., Inc*. 9th Dist. No. 09CA0073, 2010-Ohio-4657, at ¶32.

{¶10} Reineke frames his motion for new trial under Civ.R. 59(A)(5), (6), and (7) (error in the amount of recovery, judgment not sustained by the weight of the evidence, and judgment contrary to law). Yet, Reineke's argument is that the evidence was insufficient to sustain the award of fees to Schottenstein. Because insufficiency of the evidence is not one of the enumerated grounds for seeking a new trial under Civ.R. 59(A), this Court construes his argument as styled under section (A)(6), judgment not sustained by the weight of the evidence. Accordingly, the abuse of discretion standard of review applies. *Brown v. Mariano*, 9th Dist. No. 05CA008820, 2006-Ohio-6671, at ¶5, citing *Snyder v. Singer* (May 17, 2000), 9th Dist. No. 99CA0020, at *3.

{¶11} "When considering a Civ.R. 59(A)(6) motion for a new trial, a trial court must weigh the evidence and pass on the credibility of the witnesses. [Yet], the trial court assesses the weight and credibility in a more limited sense than would a jury; the court is to determine, in light of its broad discretion, whether a manifest injustice has occurred." *Brown* at ¶5. "The job of the appellate court is to review whether the trial court abused its discretion in making this determination. Absent some indication that the trial court was unreasonable, arbitrary or unconscionable in exercising its discretion, the judgment of the trial court will not be disturbed." (Internal citation omitted.) *Snyder* at *3.

{¶12} Reineke first argues that Schottenstein did not establish a contract with him relative to the fees at issue. He contends that the engagement letter is not applicable because it only pertained to the preparation of the separation agreement, which never occurred or was rendered moot by the Medina County divorce filing. He also relies on the fact that the parties never executed a new written agreement upon the divorce filing. He further maintains that

because an action on an open account is founded on the existence of a contract, Schottenstein cannot provide evidence of an account. We disagree.

> "To set forth a claim for breach of contract, a complaining party must prove the following elements by a preponderance of the evidence: (1) that a contract existed; (2) that the complaining party fulfilled its contractual obligations; (3) that the opposing party failed to fulfill its obligations; and (4) that the complaining party incurred damages as a result of this failure." *Community Health Partners Physicians, Inc. v. Sharbeck,* 9th Dist. No. 10CA009874, 2011-Ohio-4033, at ¶7, quoting *H & F Transp., Inc. v. Satin Ride Equine Transport, Inc*., 9th Dist. No. 06CA0069-M, 2008-Ohio-1004, at ¶18.

{¶13} Reineke does not dispute that the engagement letter executed by the parties constitutes an express written contract for the preparation of the separation agreement or that the invoices at issue remain unpaid. Rather, he argues that the engagement letter ceased to control when his wife filed for divorce and no contract was entered into for further services.

{¶14} The language of the engagement letter, which was introduced as evidence at the trial, made specific reference to "the possibility of the occurrence of unpredictable and unforeseen circumstances" that would prevent Danzinger from quoting "a final and specific fee" and that "[t]his is particularly true in a situation such as yours, which is essentially adversary in nature." The agreement also stated that the recording of time would apply to the "drafting of pleadings" and "preparation for and appearances in court," neither of which would be necessary for a separation agreement, but instead, pertain to a lawsuit or other contested matter. The letter also referenced "unforeseen complexities that may result during negotiations." Thus, by its very terms, the engagement letter contemplated an ongoing relationship between the parties of an unspecified duration due to the high likelihood of unpredictable and unforeseeable events in the case, including, inter alia, the potential filing of a divorce action. Accordingly, the evidence

supports the conclusion that the terms of the engagement letter extended to legal work performed after the filing of the divorce.

**{¶15}** Even if the evidence did not support the finding of an express contract between the parties for services rendered in the eventual divorce, the evidence establishes, alternatively, that the parties' conduct and expectations created an implied contract as the divorce proceeded. The Ohio Supreme Court has held that "an attorney-client relationship need not be formed by an express written contract or by the full payment of a retainer. Instead, *** an attorney-client relationship may be created by implication based upon the conduct of the parties and the reasonable expectations of the person seeking representation." *Cuyahoga Cty. Bar Assn. v. Hardiman*, 100 Ohio St.3d 260, 2003-Ohio-5596, at ¶8; see, also, *New Destiny Treatment Ctr., Inc. v. Wheeler*, 129 Ohio St.3d 39, 2011-Ohio-2266, at ¶26.

**{¶16}** Reineke testified at trial that after his wife filed for divorce in Medina County, he continued to confer with Danzinger and "then [Danzinger] was doing the work for it. So [Danzinger] was continuing on with the divorce case once it was filed." Reineke further testified that as the divorce proceeded, Danzinger continued to do work on the case, billed him monthly, and that he was paying the bills. In fact, prior to the instant action, Reineke paid roughly $96,000 in legal fees to Schottenstein. Further, there was no evidence presented at trial demonstrating that Reineke terminated their attorney-client relationship until July 2005 during the pendency of the Ashland County and Michigan divorce cases.

**{¶17}** Based on the foregoing, the record is clear that Reineke expected Schottenstein would represent him in the divorce, and in turn, Reineke continued to pay the bills. Therefore, as evidenced by the parties' conduct and mutual expectations, their attorney-client relationship also continued by implication.

{¶18} Reineke further argues that even if a contractual relationship could be established, Schottenstein failed to prove the necessary elements of a claim on account. "An 'action on an account' is 'merely a pleading device used to consolidate several different claims one party has against another.'" *Cooper & Pachell v. Haslage* (2001), 142 Ohio App.3d 704, 707, quoting *AMF, Inc. v. Mravec* (1981), 2 Ohio App.3d 29, 31. "An action on account is an action for a breach of contract. Where the defendant denies all the allegations of the complaint, the plaintiff has the burden of proving by a preponderance of the evidence all the elements of a claim for breach of contract." Id.

> "To establish a prima facie case for money owed on an account, a plaintiff must demonstrate the existence of an account, including that the account is in the name of the party charged, and it must also establish (1) a beginning balance of zero, or a sum that can qualify as an account stated, or some other provable sum; (2) listed items, or an item, dated and identifiable by number or otherwise, representing charges, or debits, and credits; and (3) summarization by means of a running or developing balance, or an arrangement of beginning balance and items that permits the calculation of the amount claimed to be due." *Great Seneca Financial v. Felty,* 1st Dist. No. C-050929, 2006-Ohio-6618, at ¶6; see, also, *Climaco, Seminatore, Delligati & Hollenbaugh v. Carter* (1995), 100 Ohio App.3d 313, 320.

{¶19} In support of his argument, Reineke primarily relies upon *Cooper & Pachell* in which this Court affirmed the trial court's finding that the plaintiff had not satisfied the requirements of an action on an account. *Cooper & Pachell*, 142 Ohio App.3d at 708. However, *Cooper & Pachell* is distinguishable from the instant matter. In *Cooper & Pachell*, the law firm sued for attorney fees for legal and tax planning work. Id. at 706. In upholding the trial court's finding, we reasoned as follows, in pertinent part:

> "In support of the alleged debt, appellant offered a law firm ledger with columns of numbers, which merely lists dates, amounts charged, amounts paid, and balances. The ledger has no specific description of the service provided and to whom the service was rendered, which is important, considering that services were allegedly rendered for Kenneth Haslage in a personal capacity, Haslage's wife, and Form-A-Thread. Attorney Jim Pachell was the sole witness for

appellant, and he provided general answers about general services rendered. However, Pachell could not specifically set forth the services rendered on specific dates, for whom specific services were rendered, whether the services were authorized, and which of the services were and were not paid for. *** While Pachell testified that as a general matter firm services were paid at rates of $150, $135, and $90 per hour, Pachell could not specifically testify as to the rate charged for services provided to appellees. ***

"For the appellees, Haslage testified that he was aware that $6,693 was supposedly due and owing, but that bills were never itemized to reflect what work was done and by whom. The bills never identified precisely who was liable (i.e. Haslage, his wife, or Form-A-Thread) for what services. Haslage regularly questioned the bills sent by appellant and felt they were being overbilled. ***

"The trial court aptly summarized the amorphous nature of appellant's evidence in its order: 'Plaintiff offered no exhibits or individual testimony breaking down or itemizing the charges in their account showing what service was rendered, by whom and the hourly rate used.' Appellant's lack of specificity was manifest throughout the record." Id. at 707-08.

{¶20} Here, Schottenstein introduced into evidence monthly invoices showing the charges from February 2005 through July 2005. Since Reineke was Schottenstein's only client in the domestic case, the question as to who was liable for the services is not an issue as it was in *Cooper & Pachell* where there were multiple clients. Nonetheless, Reineke's name and address were displayed at the top of each invoice, clearly identifying him as the liable party. The invoices also contained a ledger that included columns for the date of the service, the initials of the firm member responsible, the time expended, as well as a brief description of the services rendered. At the end of each invoice, if applicable, was an itemization of expenses, any amounts credited for the month, and a final invoice total. Schottenstein's credit manager, Jeff Deibel, testified that all bills prior to the March 2, 2005 invoice, which contained the charges for February 2005, had been paid, and that the February 2005 through July 2005 charges comprised the total of the open account. It is a simple mathematical exercise to add the monthly invoice totals and arrive at the sum of $37,542.61, the amount sought in the complaint. While Deibel could not testify as to the rate charged, the engagement letter specifically set forth Danzinger's

hourly rate of $210 and stated that "[i]f any of my associates or partners work on your matter at my request, their time will be billed at an appropriate amount." Furthermore, unlike the scenario in *Cooper & Pachell*, there was no evidence introduced at trial demonstrating that Reineke previously questioned the bills; either the hourly rate, or who performed the work, or that he felt he was being overbilled.

**{¶21}** Based on the foregoing, we conclude that *Cooper & Pachell* is distinguishable from the case at bar and that the unpaid invoices comply with the requirements for an account. Reineke's account with Schottenstein had a zero balance as of the March 2, 2005 invoice. The invoices identify the liable party, dates of service, amount of time expended and by whom, description of the services rendered, and a total sum due. Reineke consented to the hourly rate, was put on notice that different rates may be charged when appropriate, and never questioned the bills. Therefore, taken as a whole, the invoices comply with the requirements of an account. *Great Seneca Financial*, 170 Ohio App.3d at 741; *Cooper & Pachell*, 142 Ohio App.3d at 707-08. Accordingly, the evidence supports the existence of a proper account.

**{¶22}** The remaining issue raised by Reineke is whether the fees listed on the account are reasonable. Reineke contends that Schottenstein did not present any evidence of the reasonableness, value, or necessity of the fees. We disagree.

**{¶23}** The test for determining the reasonableness of attorney fees is as follows:

"Compensation for services rendered by an attorney is generally fixed by contract prior to employment and the formation of the fiduciary relationship between attorney and client. *Jacobs v. Holston* (1980), 70 Ohio App.2d 55. After the fiduciary relationship is established, the attorney has the burden of establishing the reasonableness and fairness of fees. Id. Where, prior to employment, the attorney and client have reached an agreement as to the hourly rate to be charged and the amount of the retaining fee, but the agreement fails to provide for the number of hours to be expended by the attorney, in an action for attorney fees the burden of proving that the time was fairly and properly used and the burden of showing the reasonableness of work hours devoted to the case rest on the

attorney. Id. Furthermore, a trial court must base its determination of reasonable attorney fees upon actual value of the necessary services performed, and there must be some evidence which supports the court's determination. *In re Hinko* (1992), 84 Ohio App.3d 89. In making such a determination, the court must consider many important factors, including those set forth in *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 35:

"'*** (1) [T]ime and labor, novelty of issues raised, and necessary skill to pursue the course of action; (2) customary fees in the locality for similar legal services; (3) result obtained; and (4) experience, reputation and ability of counsel. See DR 2-106(B), Code of Professional Responsibility; Annotation (1974), 57 A.L.R.3d 475.' Id. at 35." *Climaco,* 100 Ohio App.3d at 323-24.

**{¶24}** DR 2-106(B), referenced above, sets forth the factors to be considered when determining the reasonableness of a fee. We note that DR 2-106(B) has been superseded by Prof.Cond.R.1.5, effective February 1, 2007. In addition to the factors set forth in *Pyle,* the following factors may also be considered under Prof.Cond.R.1.5: the likelihood that the acceptance of the particular employment will preclude other employment; the amount involved; the time limitation imposed by the client or the circumstances; the nature and length of the attorney/client relationship; and whether the fee is fixed or contingent. Prof.Cond.Rule 1.5(a); see, also, *TCF Natl. Bank v. Daniels*, 5th Dist. No. 2009CA00121, 2010-Ohio-1402, at ¶27. Furthermore, "[a]ll factors may not be applicable in all cases and the trial court has the discretion to determine which factors to apply, and in what manner that application will affect the initial calculation." *TCF Natl. Bank* at ¶27, quoting *Bittner v. Tri-County Toyota, Inc.* (1991), 58 Ohio St.3d. 143, 146. These factors "are not exclusive. Nor will each factor be relevant in each instance." Prof.Cond.R. 1.5, Comment 1.

**{¶25}** In the instant case, the parties had reached an agreement as to the hourly rate and retaining fee at the time of Schottenstein's employment. However, the agreement did not provide for the total number of hours to be expended. Thus, Schottenstein carried the burden of

showing the reasonableness of work hours devoted to the case and that the time was fairly and properly used. *Climaco*, 100 Ohio App.3d at 323.

{¶26} At trial, Danzinger took the stand and testified at length concerning his representation of Reineke and the reasonableness of the fees sought in the complaint. Danzinger testified that he is a Martindale-Hubbell AV rated attorney who specializes in domestic relations cases and, at the time, was a partner at Schottenstein. He testified that Reineke's divorce case was one of the most difficult, complicated, complex, and emotionally-charged cases of his career and that he spent "two-plus years" and "more effort and more energy in a case than I ever had." Danzinger further testified that the case involved significant personal and corporate assets and required the valuation of nine businesses. The case was also extremely adversarial and involved highly complex and contentious issues regarding child custody, visitation, spousal support, property division, and dueling jurisdictions. As a result, the case required extensive discovery of financial information and numerous communications between Danzinger and Reineke. Danzinger testified that the invoices "accurately reflect the amount of time" spent on the case, and that on occasion, he spent more time on the case than what was billed. Furthermore, Danginger testified that the desired result was ultimately obtained; specifically, dismissal of the Medina County case.

{¶27} In turn, Reineke argues that pursuit of the dismissal resulted in the overbilling of fees because it involved the last-minute preparation and filing of a significant number of motions and briefs regarding opposing counsel's discovery tactics and requests the day before trial. Yet, both Danzinger and Reineke testified that it was their agreed strategy to seek dismissal of the Medina County case. Danzinger testified that the dismissal strategy was not only discussed at length with Reineke, but was necessary for several tactical reasons intended to advance the best

interests of his client, and hopefully, lead to the negotiation of a settlement. In support of its contention, Schottenstein introduced into evidence a letter from Danzinger to Reineke, which Reineke acknowledged at trial that he signed, wherein Danzinger memorialized and explained in full detail his recommendation to pursue the dismissal strategy. Danzinger also testified that in addition to preparing for dismissal, "we were also preparing for trial, putting exhibit books together, getting our witness lists together, prepping witnesses, doing all that if, in the alternative, we were forced to go to trial." Furthermore, our review of the billing entries for the days leading up to trial does not indicate that the time spent or description of the work reveals any charges that were not reasonable and necessary under the circumstances. Accordingly, based on the foregoing, we do not agree that Danzinger engaged in a frivolous or unethical attempt to overbill simply for purposes of inflating his fees.

{¶28} Moreover, the record does not disclose that Reineke expressed any dissatisfaction during the attorney-client relationship regarding fees. There is no evidence that he ever contested the accumulation of fees or demonstrated concern about the quality of Danziger's representation. He received invoices on a monthly basis and paid them. When he got in arrears on the fees, his father took out a loan for the outstanding balance so that Schottenstein's representation could continue. Accordingly, Reineke's argument has no merit. See, e.g., *Reminger & Reminger Co, L.P.A. v. Fred Siegel Co., L.P.A.,* (March 1, 2001), 8th Dist. No. 77712, at *7-8 (upholding trial court's determination that fees were reasonable where client failed to complain about the excessiveness of the fees while receiving periodic billings, prior to the termination of the representation, and where record demonstrated presentation of competent, credible evidence concerning reasonableness of fees).

{¶29} Reineke further argues that there was no evidence presented regarding customary fees in the local community, Medina County, for similar legal services, which was required under *Pyle*, supra, and its progeny in order to prove the reasonableness of the fees. Again, Reineke's argument is not well-taken. While Schottenstein did not present evidence regarding the customary fees in the local community, as previously stated, no single factor is dispositive of the issue of reasonableness, and the court had discretion as to which factors are relevant and should have been applied. See *TCF Natl. Bank* at ¶27; Prof. Cond. Rule 1.5, Comment 1. Therefore, the absence or presence of evidence regarding the customary fees in the local community is not, standing alone, determinative. Furthermore, Reineke did not present any evidence contesting that Schottenstein's fees were customary in the local community. The crux of his argument is simply that "I didn't sign up to pay a hundred and forty-five thousand dollars for a divorce that never happened" and that, in his opinion, he had already paid enough.

{¶30} In sum, the record here established that the jury's verdict was supported by the evidence. Schottenstein presented competent, credible evidence regarding the existence of a contract and an open account. Schottenstein also carried its burden of establishing the reasonableness, value, and necessity of its fees pursuant to the standards set forth in *Pyle*, *Climaco*, and Prof.Cond.R. 1.5. The jury heard evidence regarding the time, labor, novelty, and difficulty of the issues raised and necessary skill to pursue the course of action; the amount involved and results obtained; the experience and ability of counsel; and the nature and length of the professional relationship. It is apparent from the jury's verdict that it found the testimony and evidence presented by Schottenstein concerning the reasonableness of the fees more credible than the testimony presented by Reineke, which was within its discretion. See *Ross v. Burns* (March 10, 1997), 5th Dist. No. 1996CA000190, at *4. We find no basis to disturb the trial

court's conclusion that the jury's verdict was supported by the manifest weight of the evidence. Consequently, Reineke's sole assignment of error is overruled.

III.

**{¶31}** Reineke's sole assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

MOORE, J.
<u>CONCURS</u>

CARR, P. J.
<u>CONCURS IN JUDGMENT ONLY</u>


<u>APPEARANCES:</u>

THOMAS L. MASON, Attorney at Law, for Appellant.

RANDY D. TRAMMEL, Attorney at Law, for Appellee.