[Cite as *Wadsworth Pointe Health Care Group, Inc. v. Baglia*, 2018-Ohio-1978.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

WADSWORTH POINTE HEALTH CARE GROUP, INC.

    Appellant

    v.

ELIZABETH BAGLIA

    Appellee

C.A. No.    17CA0064-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    17-CIV-0444

DECISION AND JOURNAL ENTRY

Dated: May 21, 2018

SCHAFER, Presiding Judge.

{¶1}    Plaintiff-Appellant, Wadsworth Pointe Health Care Group, Inc., appeals from the judgment of the Medina County Court of Common Pleas dismissing its complaint for failure to state a claim upon which relief can be granted. This Court affirms.

I.

{¶2}    On May 8, 2017, Wadsworth Pointe filed a complaint against Defendant-Appellee, Elizabeth Baglia. The complaint asserted two claims wherein Wadsworth Pointe sought to recover an alleged unpaid balance for nursing residence and care provided to Elizabeth Nagy: Ms. Baglia's mother. Ms. Nagy is not party to this action, and the complaint alleges that she is now deceased.

{¶3}    In the first claim, an action on account, Wadsworth Pointe alleged that Ms. Baglia executed an admission agreement as representative for her mother, and further alleged that Ms. Baglia was personal guarantor of payment for services provided to her mother. Wadsworth

Pointe claims that it rendered services to Ms. Nagy for which she and Ms. Baglia "accumulated charges on an account" totaling $16,249.96. Wadsworth Pointe alleged that Ms. Nagy passed away on April 21, 2016, and, despite demand, Ms. Baglia has refused to pay the sums Wadsworth Pointe claims due.

{¶4} In the second claim, Wadsworth Pointe alleged that it is entitled to recover $16,249.96 in quantum meruit because Ms. Baglia "obtained the benefit and value of the nursing care and residence rendered to [her mother] by Wadsworth Pointe[,]" and "knew or ought to have reasonably expected reasonable charges" for such care.

{¶5} Ms. Baglia responded to the complaint with a motion to dismiss pursuant to Civ.R. 12(B)(6). Once the motion was fully briefed, the trial court issued its decision on August 8, 2017, dismissing both claims of Wadsworth Pointe's complaint for failure to state a claim upon which relief can be granted. The trial court found that the complaint did not allege any breach of contract other than the alleged failure to pay the balance due on an account. The trial court further found, based on a review of the agreement attached to the complaint, that Ms. Baglia had clearly not opted to assume personal liability for any amount due to Wadsworth Pointe for her mother's care. Regarding the second claim, the trial court found that, because an express contract existed related to the same subject matter, Wadsworth Pointe's claim in quantum meruit to provide restitution for unjust enrichment could not be sustained.

{¶6} Wadsworth Pointe timely appealed the judgment entry dismissing the case and presents this Court with three assignments of error.

II.

### Assignment of Error I

**The trial court erred by dismissing [Wadsworth Pointe]'s contractual claim on the grounds that [Ms. Baglia] did not execute a personal guarantee.**

{¶7} In its first assignment of error, Wadsworth Pointe contends that the trial court erred in dismissing the first claim pursuant to Civ.R. 12(B)(6) because there exists an issue of material fact as to whether Ms. Baglia executed a personal guarantee of payment. Civ.R. 12(B)(6) permits a party, prior to filing a responsive pleading, to move for dismissal on the grounds that a pleading "fail[s] to state a claim upon which relief can be granted[.]" "An appellate court reviews a trial court order granting a motion to dismiss pursuant to Civ.R. 12(B)(6) under a de novo standard of review." *Hudson v. Akron*, 9th Dist. Summit No. 28011, 2017-Ohio-7590, ¶ 8, citing *Perrysburg Twp. v. City of Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5. "Dismissal is appropriately granted once all the factual allegations of the complaint are presumed true and all reasonable inferences are made in favor of the nonmoving party, and it appears beyond doubt that the nonmoving party cannot prove any set of facts entitling him to the requested relief." *Natl. Check Bur. v. Buerger*, 9th Dist. Lorain No. 06CA008882, 2006-Ohio-6673, ¶ 8 citing *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992).

{¶8} "'Where a writing is attached to the complaint pursuant to Civ.R. 10(D), dismissal under Civ.R. 12(B)(6) is proper only when the language of the writing precludes any possibility of recovery by the plaintiff.'" *Buerger* at ¶ 14, quoting *Mesek v. Roberts Communications, Inc.*, 9th Dist. Summit No. 22968, 2006-Ohio-3339, ¶ 15. Because Wadsworth Pointe's first claim is an action on an account, "a copy of the account or written instrument must be attached to the pleading." Civ.R. 10(D)(1), *see also First Merit Bank, N.A. v. Wilson*, 9th Dist. Summit No. 23363, 2007-Ohio-3239, ¶ 8. Wadsworth Pointe attached to the complaint a copy of the admissions agreement and a statement of the account, therefore they "are part of the pleading for all purposes." Civ.R. 10(C). Consequently, [the admissions agreement and account

statement] can be considered in the trial court's review of a motion to dismiss pursuant to Civ.R. 12(B)(6). *Mesek* at ¶ 15.

{¶9} An action on an account is based in contract; therefore, to prevail on this claim Wadsworth Pointe must establish each of the essential elements of a contract claim. *Wilson* at ¶ 27, quoting *L. E. Sommer Kidron, Inc. v. Kohler*, 9th Dist. Wayne No. 06CA0044, 2007-Ohio-885, ¶ 12. "To establish a prima facie case for money owed on an account, a plaintiff must demonstrate the existence of an account, including that the account is in the name of the party charged * * *[.]" (Citations omitted.) *Schottenstein, Zox & Dunn Co., L.P.A. v. Reineke*, 9th Dist. Medina No. 10CA0138-M, 2011-Ohio-6201, ¶ 18. "The law in Ohio is clear that in the absence of a contractual relationship between two parties, an action on an account cannot be maintained by one against the other." *Hiram College v. Courtad*, 11th Dist. Portage No. 2004-P-0092, 2005-Ohio-4331, ¶ 8, quoting *Laurelwood Hosp. v. Lorenzo*, 11th Dist. Lake No. 93-L-063, 1993 Ohio App. LEXIS 6122, at 5 (Dec. 17, 1993).

{¶10} Wadsworth Pointe relies on the admission agreement attached to the complaint to establish the existence of a contractual relationship in support of this claim. Wadsworth Pointe alleged that Ms. Baglia executed this agreement "agreeing to be responsible for the nursing residence and care provided to her mother[.]" The agreement lists Ms. Baglia as representative for her mother—a resident of Wadsworth Pointe's facility—and describes Ms. Baglia's responsibilities and fiduciary obligations as her mother's representative. However, regarding responsibility for payment, the agreement explicitly states that the representative is *not* personally liable unless the parties otherwise agree and except where the agreement specifically provides otherwise. While the complaint contains no allegation that Ms. Baglia is personally

liable based on any exception to that general disclaimer, Wadsworth Pointe did allege that "[Ms.]

Baglia also executed a personal guarantee of payment for the services provided to [her mother]."

**{¶11}** The agreement states in pertinent part:

II.  CHARGES AND FEES

A. Responsibility for Payment

Effective on the effective date; You shall pay all charges and fees for services that are billed to You by FACILITY.

1. No Personal Liability of Representative.
Except as specifically provided otherwise in the Agreement, or as agreed to by Representative, all financial obligations in this Agreement are the Resident's.

* * *

B. Payment Source

* * *

5. Medicaid Applications

* * *

RESPONSIBILITY TO PAY IF MEDICAID NOT APPROVED: <u>POTENTIAL FOR DISCHARGE & PERSONAL GUARANTEE</u>

FACILITY cannot continue to provide services without payment.  If the facility is not paid timely by someone, then it will seek to discharge the resident.

Many of our residents' family members and other representatives wish to make sure that care and services to their loved ones are not terminated or interrupted if Medicaid is not approved, and the resident does not have the resources to pay for care.

If the Representative would like to join others in avoiding having the facility seek to discharge the Resident for non-payment in that instance, then he/she should initial 'yes" below.

If the Representative does not wish to protect the resident from being discharged for non-payment if Medicaid coverage is not approved, and the resident does not have the resources to pay for care, then he/she should initial "no" below.

**BY INITIALING "YES", THE REPRESENTATIVE IS AGREEING TO VOLUNTARILY PERSONALLY GUARANTEE PAYMENT TO THE FACILITY, BE JOINTLY AND SEVERALLY LIABLE FOR ALL SERVICES AND SUPPLIES RECEIVED BY THE RESIDENT IN THE EVENT THAT THE RESIDENT'S APPLICATION TO MEDICAID IS DENIED OR COVERAGE IS TERMINATED OR INTERRUPTED, AND TO MAKE ALL PAYMENTS WHEN THEY COME DUE. THE REPRESENTATIVE UNDERSTANDS THAT HE OR SHE IS NOT REQUIRED BY LAW OR THE FACILITY TO PERSONALLY GUARANTEE PAYMENT. THE REPRESENTATIVE AGREES THAT THIS GUARANTEE WILL CONTINUE UNTIL ALL FINANCIAL OBLIGATIONS TO THE FACILITY HAVE BEEN PAID IN FULL.**

*Choose 'Yes' or 'No', and then initial below.*

{¶12}  In the space beneath the "Yes" or "No" checkboxes, Ms. Baglia appears to have placed her initials.  However, Ms. Baglia did not check either box.  Contrary to Wadsworth Pointe's allegation that Ms. Baglia executed a personal guarantee, the agreement shows that Ms. Baglia did not check the box to voluntarily agree to assume personal liability.

{¶13}  In its merit brief, Wadsworth Pointe acknowledges that Ms. Baglia did not the check the box to accept personal liability. Nevertheless, Wadsworth Pointe claims that because Ms. Baglia failed to check "No" she created an ambiguity in the agreement.  Wadsworth Pointe contends that dismissal was inappropriate because it is unclear whether Ms. Baglia intended to execute a personal guarantee to assume financial responsibility for services rendered to her mother as a resident at Wadsworth Pointe's facility.

{¶14}  The fact that Ms. Baglia did not check "No" does not negate the fact that Ms. Baglia did not affirm her willingness to assume a personal financial obligation by checking "Yes" to voluntarily personally guarantee payment.  The language called upon Ms. Baglia—as representative—to check "No" if the she wanted to express that she "d[id] not wish to protect" her mother from being discharged for non-payment.  Regardless of whether Ms. Baglia wished to protect her mother in some fashion, the agreement does not indicate that Ms. Baglia agreed to be

*personally liable* for all financial obligations. Thus, the failure to check the "No" box does not create an ambiguity as to whether Ms. Baglia intended to personally guarantee payment to Wadsworth Pointe. The plain language of the agreement informed Ms. Baglia that she was not required by law, or by Wadsworth Pointe, to personally guarantee payment. The agreement gave Ms. Baglia the option to indicate her willingness to become personally liable for payment as a guarantor, and the agreement does not establish that Ms. Baglia agreed to do so.

{¶15} The pleadings demonstrate that Ms. Baglia, as her mother's representative, was not personally liable for payment and that Ms. Baglia did not assent to personally guarantee payment. Consequently, Wadsworth Pointe cannot demonstrate a contractual basis to hold Ms. Baglia personally liable on the alleged account and cannot prove any set of facts to establish a prima facie contract claim for money claimed due on such account. Because the language of the agreement precludes recovery against Ms. Baglia in her personal capacity, this Court concludes that the trial court did not err in dismissing Wadsworth Pointe's claim for failure to state a claim.

{¶16} Wadsworth Pointe's first assignment of error is overruled.

### Assignment of Error II

**The trial court erred by dismissing [Wadsworth Pointe]'s contractual claim on the grounds that other provisions of the contract could not create personal liability.**

{¶17} The same de novo standard of review applies to Wadsworth Pointe's second assignment of error, arguing that the trial court erred by dismissing its first claim pursuant to Civ.R. 12(B)(6) because alternative grounds for a breach of contract might have existed. *See Hudson*, 2017-Ohio-7590 at ¶ 8, citing *Rossford*, 2004-Ohio-4362 at ¶ 5. Wadsworth Pointe cites to provisions in the agreement which, if applicable, could give rise to personal financial liability for the representative. Wadsworth Pointe contends that, if the claim had not been

dismissed, Wadsworth Pointe could have conducted discovery to determine whether Ms. Baglia could potentially be held liable for breaching one or more provisions in the agreement.

{¶18} This Court's plain reading of the complaint reveals that Wadsworth Pointe alleged a cause of action for money due on account and a claim to recover quantum meruit. Although the claim to recover on account was founded on the admission agreement, Wadsworth Pointe did not allege that Ms. Baglia personally committed any breach of the agreement other than failing to satisfy her alleged obligation to pay the balance claimed due on the account. Wadsworth Pointe did not plead any separate claim for breach of contract aside from the action on account, and there are not sufficient allegations in the complaint to even imply an additional cause of action for breach of contract. Accordingly, we conclude that the trial court did not err in dismissing the claim over Wadsworth Pointe's contention that other claims for breach of contract might theoretically be asserted under the admission agreement.

{¶19} Wadsworth Pointe's second assignment of error is overruled.

### Assignment of Error III

**The trial court erred by dismissing [Wadsworth Pointe]'s quantum meruit claim on the grounds that it could not be raised alongside a contractual claim.**

{¶20} Wadsworth Pointe contends in the third assignment of error that the trial court erred by dismissing the quantum meruit claim pursuant to Civ.R. 12(B)(6). Here again, the same de novo standard of review applies to this assignment of error. *See Hudson*, 2017-Ohio-7590 at ¶ 8, citing *Rossford*, 2004-Ohio-4362 at ¶ 5. The trial court concluded that because the terms of the admission agreement established that Ms. Baglia had no personal liability payment, a claim to recover in quantum meruit for unjust enrichment could not be sustained. Wadsworth Pointe argues that the mere presence of a claim based on a contract along with an alternative claim for

unjust enrichment do not warrant dismissal of the unjust enrichment claim. If the contract claim were to fail, Wadsworth Pointe argues that it could recover under its quantum meruit theory.

{¶21} "A claim for unjust enrichment, or quantum meruit, is an equitable claim based on a contract implied in law, or a quasi-contract" and "the elements of [the claims] are identical." (Internal citations omitted.) *Padula v. Wagner*, 9th Dist. Summit No. 27509, 2015-Ohio-2374, ¶ 47. "To succeed on a claim for unjust enrichment, a plaintiff must show that (1) it conferred a benefit upon the defendant; (2) the defendant knew of the benefit; and '(3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment.'" *Chaffee Chiropractic Clinic, Inc. v. Stiffler*, 9th Dist. Wayne No. 16AP0033, 2017-Ohio-7790, ¶ 24, quoting *Magnum Steel & Trading, L.L.C. v. Mink*, 9th Dist. Summit Nos. 26127 and 26231, 2013-Ohio-2431, ¶ 42. "Ohio law does not permit recovery under the theory of unjust enrichment when an express contract covers the same subject." *Padula* at ¶ 48, citing, *Ullmann v. May*, 147 Ohio St. 468, 475, 478-79, and paragraph four of the syllabus (1947), and *Wochna v. Mancino*, 9th Dist. Medina No. 07CA0059-M, 2008-Ohio-996, ¶ 18.

{¶22} Wadsworth Pointe alleged that it is entitled to recover in quantum meruit the $16,249.96 balance due on account because Ms. Baglia "obtained the benefit and value of the nursing care and residence rendered to [her mother] by Wadsworth Pointe," and "knew or ought to have reasonably expected reasonable charges" for such care. As an essential element of an unjust enrichment claim, Wadsworth Pointe must show that it conferred a benefit upon Ms. Baglia. *See Stiffler* at ¶ 24. However, the complaint alleges only that Ms. Baglia obtained the benefit and value of nursing care and residence rendered *to her mother*. Wadsworth Pointe did not allege any basis *other than the admission agreement* for holding Ms. Baglia personally liable for the benefit of services conferred, not on Ms. Baglia, but on her mother.

{¶23} Wadsworth Pointe pleads the existence of the admission agreement in its complaint and explicitly incorporates the agreement into its second claim asserting that it is entitled to recover from Ms. Baglia in quantum meruit. The admission agreement sets forth the applicable provisions for payment and financial obligations of the parties. Specifically, as discussed above, the agreement establishes that Ms. Baglia, with limited exception, is not personally liable for charges and fees for services provided to her mother as a resident of Wadsworth Pointe's facility.

{¶24} Wadsworth Pointe's argument appears to obscure the distinction between the existence of a contract and the ability to recover on a contract. A party may be able to assert a claim to recover in quantum meruit for an amount due on an account where no valid agreement exists. However, because Ms. Baglia's relationship with Wadsworth Pointe is governed by an express agreement regarding the subject matter of the claim, Ohio law does not permit Wadsworth Pointe to maintain an equitable claim for unjust enrichment as a fail-safe in the event that it does not recover on its contract claim. *See Wochna* at ¶ 18. Wadsworth Pointe "may not invoke equity" to circumvent the admission agreement declaring the financial obligations and responsibilities of Ms. Baglia. *See Padula* at ¶ 50. Accordingly, we conclude that the trial court did not err in determining that Wadsworth Pointe failed to state a claim in quantum meruit and dismissing the claim.

{¶25} Wadsworth Pointe's third assignment of error is overruled.

III.

{¶26} Each of Wadsworth Pointe's assignments of errors is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

11

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JULIE A. SCHAFER
FOR THE COURT


CARR, J.
TEODOSIO, J.
CONCUR.


APPEARANCES:

TIMOTHY N. TOMA and KATHERINE B. MCCOY, Attorneys at Law, for Appellant.

JACK B. COOPER, Attorney at Law, for Appellee.