[Cite as *Marsico v. Skrzypek*, 2014-Ohio-5185.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | | |
|---|---|---|
| HENRY C. MARSICO | | C.A. No. 13CA010410 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| EDWARD J. SKRZYPEK, et al. | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellees | | CASE No. 10CV167594 |

DECISION AND JOURNAL ENTRY

Dated: November 24, 2014

BELFANCE, Presiding Judge.

{¶1} Plaintiff-Appellant Henry Marsico appeals from the judgments of the Lorain County Court of Common Pleas. For the reasons set forth below, we affirm.

I.

{¶2} On May 18, 2008, while stopped for a light, Mr. Marsico's Mercedes Benz was rear-ended by a vehicle driven by Defendant-Appellee Edward Skrzypek. On May 17, 2010, Mr. Marsico filed a complaint against Mr. Skrzypek for damages for the injuries Mr. Marsico alleged he suffered as a result of the May 18, 2008 car accident.

{¶3} On May 20, 2010, while in stop-and-go traffic, Mr. Marsico's Toyota 4Runner was rear-ended by a vehicle driven by Defendant-Appellee Emily Burns. On October 22, 2010, while stopped and waiting to turn at an intersection, Mr. Marsico's Toyota 4Runner was rear-ended by a tractor-trailer driven by Defendant-Appellee Bobby Whelchel in the course of his employment with Defendant-Appellee Schiemann Investments, Inc. In July 2011, after seeking

and obtaining leave, Mr. Marsico filed an amended complaint to add Ms. Burns, Mr. Whelchel, and Schiemann, Investments, Inc. as Defendants and to assert claims seeking damages he allegedly suffered as a result of the car accidents with Ms. Burns and Mr. Whelchel. Mr. Marsico further alleged that the combined tortious acts of the Defendants caused him a single injury.

{¶4} The matter proceeded to a jury trial. The parties stipulated to the negligence of Mr. Skrzypek, Ms. Burns, and Mr. Whelchel. Thus, the jury was faced with determining whether the negligence of the Defendants proximately caused injury to Mr. Marsico. At the close of evidence, Mr. Marsico moved for a directed verdict against all of the Defendants on the issue of causation. That motion was denied. The jury found in favor of all the Defendants and specifically found that none of the Defendants caused injury to Mr. Marsico. Mr. Marsico filed a motion for judgment notwithstanding the verdict and a motion for a new trial, which were subsequently denied. Mr. Marsico has appealed, raising 13 assignments of error for our review. Some of the assignments of error will be discussed out of sequence to facilitate our review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED COUNSEL FOR THE APPELLEES TO DISPLAY ENLARGEMENTS OF A PRIOR INCONSISTENT STATEMENT BY MR. MARSICO AND OTHER DEMONSTRATIVE EVIDENCE TO THE JURY DURING OPENING STATEMENTS.

{¶5} Mr. Marsico asserts in his first assignment of error that the trial court erred in allowing the Defendants to display certain evidence to the jury during opening statements. Specifically, Mr. Marsico argues that (1) photographs of Mr. Marsico's vehicles following the accidents, (2) a diagram of the human shoulder, (3) an enlargement of a portion of Mr. Marsico's

physical therapy records, and (4) enlargements of Mr. Marsico's deposition testimony and medical records should not have been displayed to the jury.

{¶6} With respect to the display of the photographs of Mr. Marsico's vehicle, the diagram of the shoulder, and the enlargement of the physical therapy records, we note that Mr. Marsico did not object during opening statements to their display; thus, he has forfeited all but plain error. *See Rennaci v. Evans,* 9th Dist. Medina No. 09CA004-M, 2009-Ohio-5154, ¶ 24. It is well settled that the failure to timely object to a possible error results in a forfeiture of the issue for purposes of appeal. *See Goldfuss v. Davidson,* 79 Ohio St.3d 116, 121 (1997). Moreover, "[i]n civil cases, the application of the plain error doctrine is reserved for the rarest of circumstances." *Rennaci* at ¶ 24. Mr. Marsico did not object below to the display of the photographs during opening statements and has not argued plain error on appeal. *See id.* Accordingly, we overrule his arguments. *See id* at ¶ 25.

{¶7} Mr. Marsico next asserts that the trial court committed reversible error in allowing counsel for Ms. Burns and counsel for Mr. Whelchel and Schiemann Investments, Inc. to display and read portions of Mr. Marsico's deposition transcript and his medical records during their opening statements. Mr. Marsico asserts that these items were read and displayed to demonstrate Mr. Marsico's deposition testimony was inconsistent with his medical records. Accordingly, Mr. Marsico maintains that displaying and reading those items violated Evid.R. 613(B)(1) concerning the foundation required prior to admitting prior inconsistent statements.

{¶8} At the point in time that Ms. Burns' counsel sought to discuss and display Mr. Marsico's deposition testimony and medical records during opening, the following exchange took place:

[Mr. Marsico's counsel:] Objection, Your Honor. That's not evidence.

[Ms. Burns' counsel:]  Deposition transcript, Your Honor.

[The Court:]  Deposition transcript, you're going to enter that into evidence.

[Ms. Burns' counsel:]  Pardon me?

[The Court:]  That will be entered into evidence.

[Ms. Burns' counsel:]  Thank you, Your Honor.

[The Court:]  Is that my understanding, you're going to be cross-examining him on that?

[Ms. Burns' counsel:]  Yes, absolutely.

[Mr. Marsico's counsel:]  Okay.

Later, during the opening statement of counsel for Mr. Whelchel and Schiemann Investments, Inc., counsel again discussed those same items, this time without objection.

{¶9}    Mr. Marsico asserts that he preserved for appeal the issue of whether admission of the above discussed evidence violated Evid.R. 613(B)(1).  However, Mr. Marsico's counsel did not mention that rule in his objection, instead only indicating that the items sought to be displayed were not evidence.  Accordingly, it does not appear the objection he seeks to raise on appeal was before the trial court.  *See Burton v. Slusher,* 7th Dist. Mahoning No. 07-MA-143, 2008-Ohio-4812, ¶ 26 ("[A]ppellants' only objection was to the first comment and it was simply on the basis of hearsay.  Appellants did not object to the comments on the basis that they dealt with a stipulated issue.  Thus, they [forfeited] such an objection for purposes of appeal."); *see also Dragway 42 LLC v. Kokosing Constr. Co. Inc.,* 9th Dist. Wayne No. 09CA0073, 2010-Ohio-4657, ¶ 26, citing Evid.R. 103(A), (D) ("While Kokosing objected multiple times during Ferguson's direct testimony, Kokosing did not cite a basis for its objections.  In addition, Kokosing did not object at all when Ferguson testified concerning causation.  Thus, Kokosing

has forfeited all but plain error on appeal."). Further, Mr. Marsico has not developed a plain error argument on appeal.

{¶10} Additionally, we note that, based on the totality of the opening statements, it appears that, notwithstanding the initial objection to the use of the deposition testimony and medical records during opening, Mr. Marsico's counsel may have ultimately acquiesced to their use. We note that the trial court did not directly rule on the objection, and, after Ms. Burns' counsel indicated that he would be using the same materials in cross-examination, instead of restating or clarifying the objection, Mr. Marsico's counsel instead said, "Okay." No further objection concerning those documents was subsequently raised. If Mr. Marsico's counsel had not acquiesced to their use during opening it would have been reasonable for Mr. Marsico's counsel to object when counsel for Mr. Whelchel and Schiemann Investments, Inc. made use of the same materials. However, Mr. Marsico's counsel did not do so.

{¶11} In light of all of the foregoing, we cannot say this issue has been preserved for appeal and overrule the argument on that basis. Mr. Marsico's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED THE APPELLEES TO MAKE CLOSING ARGUMENTS TO THE JURY BEFORE PRODUCTION OF EVIDENCE IN VIOLATION OF R.C. 2310.01.

{¶12} Mr. Marsico's second assignment of error is brief and somewhat difficult to follow. He seems to be asserting that the opening statements of counsel for the Defendants instead were closing arguments and, thus, violated the order of trial proceedings set forth in R.C. 2315.01. Given the limited argument made on appeal, *see* App.R. 16(A)(7), the fact that no objection on this basis appears in the record, and that Mr. Marsico has not developed a plain

error argument, we overrule this argument. *See Goldfuss*, 79 Ohio St.3d at 121; *Renacci,* 2009-Ohio-5154, at ¶ 24. Mr. Marsico's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ABUSED ITS DISCRETION, TO THE PREJUDICE OF MR. MARSICO, WHEN IT REFUSED TO ALLOW MR. MARSICO TO PRODUCE EVIDENCE OF HIS REPUTATION FOR TRUTHFULNESS AND HONESTY.

{¶13} Mr. Marsico asserts in his third assignment of error that the trial court erred in refusing to allow Mr. Marsico's witness to testify to his reputation for truthfulness and honesty. We do not agree.

{¶14} The first witness to testify at trial was Officer Mark Mitchell who responded to the first collision. After establishing that Officer Mitchell knew Mr. Marsico for approximately 25 years, Mr. Marsico sought to elicit testimony from Officer Mitchell concerning Mr. Marsico's reputation for truthfulness and honesty. Defense counsel objected, and the trial court sustained the objection.

{¶15} Mr. Marsico argues on appeal that, even though the witness whose testimony was excluded was the first witness, Mr. Marsico should have been able to elicit testimony from that witness about Mr. Marsico's reputation for truthfulness because the Defendants were allowed to introduce Mr. Marsico's prior inconsistent statements in their opening statements. *See* Evid.R. 608(A) ("The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."). Mr. Marsico's counsel did not proffer the testimony the witness would have offered if allowed to testify.

> A party may not predicate error on the exclusion of evidence during the examination in chief unless two conditions are met: (1) the exclusion of such evidence must affect a substantial right of the party and (2) the substance of the excluded evidence was made known to the court by proffer or was apparent from the context within which questions were asked.

(Emphasis omitted.) *State v. Gilmore,* 28 Ohio St.3d 190 (1986), syllabus; *see also* Evid.R 103.

**{¶16}** We cannot say that the substance of the excluded evidence was evident from the context of the questions. It would be highly speculative to assume that the witness would testify favorably for Mr. Marsico. Even if we were to presume that, we would have no way of knowing what precisely he would have said. Thus, we are also unable to evaluate whether the exclusion of that testimony impacted Mr. Marsico's substantial rights. *See State v. Jackson,* 4th Dist. Jackson No. 633, 1991 WL 110221, *3-*4 (June 13, 1991); *see also In re Shane L.F.,* 6th Dist. Huron No. H-05-014, 2006-Ohio-3876, ¶ 41; *State v. Leftridge,* 8th Dist. Cuyahoga No. 66818, 1994 WL 723712, *3 (Dec. 29, 1994). In the absence of a proffer or the ability to determine the substance of the testimony from the context of the questions, Mr. Marsico's argument that the exclusion of this evidence constitutes reversible error is not well-taken. *See Gilmore* at syllabus; *In re Shane L.F.* at ¶ 41. Mr. Marsico's third assignment of error is overruled.

ASSIGNMENT OF ERROR VII

> THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT CHARGED OR INSTRUCTED THE JURY BEFORE ALLOWING THE PARTIES TO ARGUE THE CASE IN VIOLATION OF R.C. 2315.01.

**{¶17}** Mr. Marsico asserts in his seventh assignment of error that the trial court erred in instructing the jury prior to closing arguments.

**{¶18}** The trial court, prior to deciding to charge the jury prior to closing arguments, asked if anyone objected to the trial court doing so. No one objected. Accordingly, Mr. Marsico has forfeited all but plain error but has not set forth a plain error argument on appeal. *See*

*Renacci,* 2009-Ohio-5154, at ¶ 24.  His seventh assignment of error is overruled on that basis.

*See id.*

ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED BY DENYING MR. MARSICO'S MOTION FOR DIRECTED VERDICT AGAINST MR. SKRZYPEK ON THE ISSUE OF CAUSATION.

ASSIGNMENT OF ERROR VIII

THE TRIAL COURT ERRED WHEN IT DENIED MR. MARSICO'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AGAINST MR. SKRZYPEK.

{¶19}  Mr. Marsico maintains in his fourth assignment of error that the trial court erred in denying his motion for directed verdict on the issue of causation against Mr. Skrzypek.  Mr. Marsico argues in his eighth assignment of error that the trial court erred in denying his motion for judgment notwithstanding the verdict against Mr. Skrzypek.  As Mr. Marsico makes essentially the same argument in both assignments of error, we address them together.

> "'The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict.  The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied.  Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions.'"

*Jackovic v. Webb,* 9th Dist. Summit No. 26555, 2013-Ohio-2520, ¶ 15, quoting *Osler v. City of Lorain,* 28 Ohio St.3d 345, 347 (1986), quoting *Posin v. A.B.C. Motor Court Hotel,* 45 Ohio St.2d 271, 275 (1976).  Both motions are reviewed de novo.  *Jackovic* at ¶ 15.

{¶20}  Mr. Marsico's argument is limited to whether he was entitled to a directed verdict or judgment notwithstanding the verdict on the issue of causation.  Essentially, he maintains that the evidence only supports the conclusion that Mr. Skrzypek's negligence caused him some

injury. He asserts that, because the medical experts' testimony that the accident caused him some injury was not contradicted at trial, he was entitled to a directed verdict and/or judgment notwithstanding the verdict on the issue of causation. We do not agree.

{¶21} While certainly there was evidence whereby a jury could conclude that Mr. Skrzypek's negligence did cause Mr. Marsico some injury, based on the totality of the record and viewing the evidence in a light most favorable to Mr. Skrzypek, reasonable minds could reach different conclusions on this issue. In other words, the jury could have reasonably concluded that Mr. Marsico failed to meet his burden in establishing that the accident was severe enough to cause any injury and/or that Mr. Marsico's injuries were caused by the accident with Mr. Skrzypek.

{¶22} The record discloses that, prior to the motor vehicle accidents at issue, Mr. Marsico, inter alia, had a history of prior automobile accidents, prior right shoulder surgery, arthritis, several prior instances of reported back pain, neck stiffness that would bother him on occasion, and several knee surgeries to both knees. Mr. Marsico admitted that he had a neck problem in the 1970s after an accident but denied having consistent neck problem prior to May 18, 2008. He also testified that his left shoulder was fine prior to the May 18, 2008 accident and that he "had bumped it" in an accident in the 1990s. Mr. Marsico acknowledged that he did have a prior shoulder surgery on his right shoulder in the 1990s and that he sometimes had stiffness in that shoulder prior to the May 18, 2008 accident. He also noted that, prior to the accidents at issue, his "back bothered [him] a little bit at different times[.]" Mr. Marsico also acknowledged records from the 2000s, prior to the accident, that contain complaints of low back pain. When asked if he had chronic low back problems prior to the three accidents, he stated that he "had

back problems." Additionally, Mr. Marsico admitted to having sleep disturbances on and off for many years.

{¶23} On May 18, 2008, around 7:00 p.m. at the intersection of East River Road and 4th Street in Elyria, Mr. Skrzypek's Chevy Blazer rear-ended Mr. Marsico's Mercedes Benz. The testimony indicates that Mr. Marsico was stopped at a light at the time of the collision. Officer Mark Mitchell, who responded to the accident, testified that his report indicated that Mr. Skrzypek was going 25 m.ph. However, Officer Mitchell also reviewed the photographs of the cars following the accident and agreed that, based upon his experience, it did not look like the Chevy struck the Mercedes at 25 m.p.h. Moreover, Officer Mitchell did not see any damage to the Mercedes based upon the photo shown to him and the jury at trial. Officer Mitchell described the damage to the vehicles as minor.

{¶24} Mr. Marsico testified that he was stopped at a red light with his left hand on the steering wheel when "all of a sudden out of no[where] [he] was slammed from behind; it felt like [he] got hit by a truck." Based on the impact, he "thought the whole back end of [his] Mercedes [had been] crushed." After the collision, he felt a little dizzy and had pain and tingling going down his left arm. In addition, he had back pain and could not bend down. His left shoulder and neck hurt as well and he had a headache. Mr. Marsico declined to go to the emergency room in an ambulance, but, after his vehicle was cleared to leave the scene, he opted to drive himself to the emergency room. At the emergency room he had a CT scan and received pain medications. The doctor there instructed him to follow-up with his own physician.

{¶25} With respect to the collision, Mr. Skrzypek testified that he stopped at the red light and "was reaching for [his] cigarette lighter to [his] right and on the console and [his] right foot slipped off the brake and [he] moved forward slightly and bumped Mr. Marsico's vehicle."

Mr. Skrzypek indicated that he then got out of the car and thought he heard Mr. Marsico indicate he was alright. Mr. Skrzypek looked at the cars and did not notice any damage. Mr. Skrzypek admitted that, on May 18, 2008, prior to the accident, and over the course of a couple hours, he consumed five or six beers at the American Legion, but he indicated that such did not impact his ability to recall how fast he was traveling; he maintained that he was not going 25 m.p.h. at the time of the accident. Instead, he asserted that 25 m.p.h. was the speed he was traveling prior to coming to a complete stop, before his foot slipped off the brake.

{¶26} Dr. John Jonesco[1], Mr. Marsico's physician, saw him May 20, 2008. At the time, Mr. Marsico complained of left shoulder and neck pain, tingling and numbness in his left arm, pain in fingers in his left hand, back pain, headache, and a history of dizziness. Dr. Jonesco referred Mr. Marsico to physical therapy and saw him a couple times while Mr. Marsico was going to physical therapy. Dr. Jonesco prescribed pain and sleep medication. Dr. Jonesco concluded that Mr. Marsico had "significant soft tissue injury through the neck, the upper and lower back area, and [Dr. Jonesco] was also concerned about nerve damage to the [cervical] areas of the spine[]" as a result of the accident on May 18, 2008. Specifically, he classified Mr. Marsico's injury as a flexion-extension injury. Following the accident, Mr. Marsico also claimed to have problems sleeping.

---

[1] Dr. Jonesco, Dr. Robert Zanotti, and Dr. Manuel Martinez testified at trial via video deposition. The transcripts and videos were filed in the trial court prior to trial. However, the videos and transcripts were not marked during the trial, nor admitted into evidence during the trial. Notwithstanding any impropriety, as none of the parties have complained about this procedure and all parties have relied on the transcripts in their briefs, this Court will consider the videos/transcripts in reviewing this appeal.

{¶27} After Mr. Marsico's initial visit to Dr. Jonesco following the accident, Mr. Marsico continued to experience pain and problems, including new onset left shoulder weakness. X-rays of Mr. Marsico's spine, inter alia, revealed arthritic changes. In reviewing the X-rays of Mr. Marsico's left shoulder, the radiologist indicated an MRI of that shoulder might prove helpful. Ultimately, Dr. Jonesco ordered an MRI which showed an irregularity in Mr. Marsico's left shoulder. To address that concern, Dr. Jonesco recommended that Mr. Marsico see an orthopedic surgeon.

{¶28} Following Mr. Marsico's continued pain and problems following the third car accident, Dr. Jonesco diagnosed Mr. Marsico with post-traumatic fibromyalgia, which he described as "a disease involving primarily soft tissue and muscular components that are a cause of chronic pain[.]" He attributed the post-traumatic fibromyalgia to the summation of the motor vehicle accidents.

{¶29} Dr. Jonesco indicated during cross-examination that he never saw any of the pictures of the vehicles involved in the three accidents. Dr. Jonesco testified that he was not aware that Mr. Marsico was treated by another physician in 2001 for back pain or that he had a fall at a country club in 2006. However, Dr. Jonesco did acknowledge that his records disclosed several instances in which Mr. Marsico reported back pain prior to the accidents. Dr. Jonesco agreed that, when he gives an opinion as to causation with respect to a neck, back, or shoulder problem, it is based primarily on the history the patient provides and, if that history is not complete, an opinion as to causation may not be accurate either.

{¶30} Mr. Marsico also saw Dr. Robert Zanotti, an orthopedic surgeon, who diagnosed Mr. Marsico with a tear in the labrum (cartilage) of the left shoulder. Dr. Zanotti performed a corrective surgery in August 2008, and thereafter ordered physical therapy. When Mr. Marsico's

pain did not completely resolve, additional imaging studies were performed, and further arthritic changes were noted. Dr. Zanotti performed a second shoulder surgery on the left shoulder in January 2009, to address the arthritis in Mr. Marsico's left shoulder. Dr. Zanotti testified that "based upon a reasonable medical degree of certainty and the history provided, it would be reasonable to conclude that the accident aggravated the pre-existing arthritis, aggravated the pre-existing spurs, caused irritation in the rotator cuff and tore his labrum." Dr. Zanotti agreed that, if a patient fails to give a doctor a complete and accurate history, then the doctor's opinion on what caused the problem may not be accurate either. Dr. Zanotti admitted to not being aware that Mr. Marsico was in an accident in 1993 in which he injured his neck, back, and left shoulder. Dr. Zanotti also was not aware that, prior to the 2008 left shoulder surgery, on June 11, 2008, prior to having the MRI of the left shoulder, Mr. Marsico reported to his physical therapist that he had significant shoulder pain the previous day after attempting to put an item on the conveyor belt at the grocery store. However, Dr. Zanotti did not find those omissions to be important.

{¶31} On December 2, 2010, following all three accidents, Dr. Manuel Martinez[2] conducted an independent medical evaluation of Mr. Marsico pursuant to a request by Mr. Skrzypek. During that evaluation, Mr. Marsico did not mention the car accident with Ms. Burns or the car accident with Mr. Whelchel and did not mention any problems with his right shoulder (despite those being complaints associated with the accidents with Ms. Burns and Mr. Whelchel). Mr. Marsico asserted at trial that he did not inform Dr. Martinez of his right shoulder problems

---

[2] We note that the transcript of the trial evidences that the video played at trial was altered to delete sustained objections. The copy that this Court possesses is not altered to reflect any deletions. However, this Court has not relied on any portions of the deposition that were objected to in conducting its analysis.

because he did not trust Dr. Martinez. Dr. Martinez agreed that the accuracy of a patient's history was important to a doctor evaluating a patient for the first time.

{¶32} At the evaluation with Dr. Martinez, Mr. Marsico provided the following history:

[H]e was involved in a motor vehicle accident. At that point, he was a driver of a car that was wearing a seatbelt. He was hit from behind. He did not recall hitting anything inside the vehicle itself. There was no deployment of the airbag. He did not hit anyone in front of him.

At that point, police was called to the scene. EMS was not called. He subsequently went and drove home.

On his way home, he felt dizzy, so he went to the emergency room, was evaluated in the emergency room and complaining of neck pain, lower back pain and left shoulder pain, along with headaches.

He was also complaining of some tingling in his left arm. He was evaluated in the emergency room and released. He subsequently went to see his primary care doctor, Dr. Jonesco, about two days later.

He was placed on medication and physical therapy. Eventually he had an MRI performed of his left shoulder and then was sent to see Dr. Zanotti, who's an orthopedic surgeon. Had surgery performed by Dr. Zanotti on two separate occasions. He was placed on physical therapy after the surgery.

{¶33} At the time of the examination, Mr. Marsico only complained of pain in his lower back, left shoulder, and neck. He did not complain of right shoulder pain and did not mention previous surgery on his right shoulder, which Mr. Marsico admitted happened after a 1991 motor vehicle accident. After the independent medical examination and after reviewing some of Mr. Marsico's medical records, Dr. Martinez concluded that Mr. Marsico "sustained a cervical and lumber spine strain, so the neck and lower back were strained, and he also sustained a strain – a sprain to the left shoulder with irritation of preexisting arthritis of the rotator cuff in the left shoulder." Further, Dr. Martinez did not believe that Mr. Marsico suffered any permanent injury and believed that the injuries he did suffer would have resolved in a "reasonable amount of time." Dr. Martinez noted that "common sense would dictate if you have a car that is totally

smashed up, you're going to have more severe damage on those individuals than a car that is barely touched. Common sense would dictate that because of physics basically."

**{¶34}** Dr. Martinez also testified that Mr. Marsico denied having a history of low back problems and indicated he was not aware that Dr. Jonesco and another physician had previously treated Mr. Marsico for low back problems prior to the accidents. Dr. Martinez agreed that he would have wanted to know those aspects of Mr. Marsico's history to determine whether there was any pre-existing condition. However, Mr. Marsico did admit to having problems with his "SI joints" which are located where the pelvis meets the spine. With respect to Mr. Marsico's neck injury, Dr. Martinez noted that the X-rays taken showed degenerative changes that would have pre-existed the accident. In addition, Dr. Martinez agreed that those types of changes could cause pain even absent a motor vehicle accident. Dr. Martinez testified that he was unaware that Mr. Marsico suffered neck injuries in accidents in the 1990s. With respect to Mr. Marsico's left shoulder injuries, Dr. Martinez did not believe that the tear of Mr. Marsico's left labrum was caused by the accident with Mr. Skrzypek as the hit from behind was not consistent with the type of injury that would cause a labral tear. Instead, Dr. Martinez felt that the labral tear could have been caused by the June 2008 grocery store incident.

> In an action for negligence, a plaintiff has the burden to prove, by a preponderance of the evidence, that the defendant's negligence was a direct or proximate cause of her injuries. * * * The general rule is that the issue of causal connection between an injury and a specific subsequent physical disability involves a scientific inquiry and must be established by the opinion of medical witnesses competent to express such opinion. An exception exists if the cause and effect are so apparent that they are matters of common knowledge.

(Internal quotations and citations omitted.) *Garcea v. Woodhull,* 9th Dist. Wayne No. CA010069, 2002-Ohio-2437, ¶ 11. Further, "[b]ecause what constitutes a natural and continuous sequence is insusceptible of determination other than in the context of a particular

case[,] * * * the issue of proximate cause is ordinarily one for determination by the jury." (Internal quotations and citations omitted.) *Jackovic,* 2013-Ohio-2520, at ¶ 8.

**{¶35}** Nonetheless, the foregoing does not require the jury to believe the testimony of expert witnesses on the issue of causation. Nor does it require that the defendants also must call an expert to contradict the testimony of plaintiff's experts. *See Butler v. Stevens,* 2d Dist. Montgomery No. 22822, 2009-Ohio-2775, ¶ 52. For example, if there is evidence from which the jury could have found that the assumptions underlying the medical experts' opinions were inaccurate or incomplete, the jury is not required to credit the medical experts' opinions with respect to the issue of causation. *Id.* at ¶ 54.

**{¶36}** Here, it is clear that the medical experts based their opinion in part on the information relayed by Mr. Marsico. Most of Mr. Marsico's injuries were subjective in nature, and, thus, the accuracy of the experts' opinions would inherently be limited by the accuracy and completeness of the information provided by Mr. Marsico. *See Butler* at ¶ 52-53; *see also Kariv v. Consolo,* 8th Dist. Cuyahoga No. 100585, 2014-Ohio-3910, ¶ 8; *Krannitz v. Harris,* 4th Dist. Pike No. 00CA649, 2001 WL 243388, *6 (Jan. 19, 2001). Further, there was evidence that Mr. Marsico did not relay all potentially important information to the medical experts. For instance, Mr. Marsico did not inform Dr. Martinez that he was in two other car accidents or that he was having any problems with his right shoulder. Additionally, Dr. Martinez was not aware of Mr. Marsico's prior accidents or incidents of low back pain. There was also evidence that Dr. Martinez did not believe that the major injury to Mr. Marsico's shoulder – the tear of the labrum – was caused by the car accident. Moreover, there was evidence from which a jury could reasonably infer that Mr. Marsico's perceptions surrounding the accident were inaccurate. Mr. Marsico testified that it felt like he was hit by a truck and expected the entire rear of his car was

going to appear smashed in following the accident. The jury was able to view photographs of the cars following the accident and observe how little damage was done to the vehicle. In fact, the officer who testified at trial could not see any observable damage to Mr. Marsico's vehicle in the photograph he was shown. The jury heard testimony from Mr. Skrzypek that Mr. Skrzypek's vehicle was at a complete stop prior to the accident and only rolled into Mr. Marsico's vehicle when Mr. Skrzypek's foot slipped off the brake. The collision did not cause the air bags to deploy, and Mr. Marsico drove his vehicle away from the scene. Viewing the photographic evidence alongside Mr. Marsico's testimony and in a light most favorable to Mr. Skrzypek, a reasonable juror could conclude Mr. Marsico's description of the accident was inconsistent with the photographs. In addition, there was evidence which called into question the validity of the medical experts' opinions. Thus, when considering all the evidence in a light most favorable to Mr. Skrzypek, a reasonable jury could conclude that Mr. Marsico failed to demonstrate causation by a preponderance of the evidence. Thus, we cannot say the trial court erred in denying the motion for directed verdict or motion for judgment notwithstanding the verdict. Mr. Marsico's fourth and eighth assignments of error are overruled.

ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED BY DENYING MR. MARSICO'S MOTION FOR DIRECTED VERDICT AGAINST MS. BURNS ON THE ISSUE OF CAUSATION.

ASSIGNMENT OF ERROR X

THE TRIAL COURT ERRED WHEN IT DENIED MR. MARSICO'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AGAINST MS. BURNS.

{¶37} Mr. Marsico asserts in his fifth assignment of error that the trial court erred in denying his motion for a directed verdict against Ms. Burns on the issue of causation. Mr.

Marsico asserts in his tenth assignment of error that the trial court erred in denying his motion for judgment notwithstanding the verdict with respect to Ms. Burns. Mr. Marsico asserts that the evidence only supports the conclusion that he suffered injuries proximately caused by a car accident on May 20, 2010, involving Ms. Burns.

{¶38} Mr. Marsico discussed the car accident of May 20, 2010, at trial. He indicated that he was in stop-and-go traffic on State Route 2. He testified he was driving a Toyota 4Runner, when "all of a sudden out of no[where], boom, [he] g[o]t hit again." Mr. Marsico's right arm was on the steering wheel at the time. He testified that he hurt his right shoulder, back, and neck as a result of the collision. The police report indicated that Mr. Marsico's vehicle suffered minor damage to his rear bumper and trailer hitch and that Mr. Marsico reported soreness in his neck and back. When the trooper who testified about the accident viewed pictures of Mr. Marsico's vehicle at trial, the trooper indicated that he only saw scuff marks to the bumper in the photographs. The trooper testified that Ms. Burns indicated she was going 5 to 10 m.p.h. prior to the accident. Ms. Burns testified that she looked away for a brief second in the stop-and-go traffic when she saw Mr. Marsico's brake lights, braked, but ended up hitting his vehicle anyway. She estimated that she was going between 5 to 10 m.p.h. at the time, before she hit her brakes. Ms. Burns described the impact as "very minimal." She stated that she asked Mr. Marsico several times if he was okay and each time he indicated that he was fine. Neither vehicle was towed from the scene and there were no visible injuries to either party. Mr. Marsico did not request an ambulance and did not go to the emergency room that day. Ms. Burns proceeded to her dance class where she danced for approximately an hour. It was not until the next day that Mr. Marsico sought treatment from Dr. Jonesco.

{¶39} According to Mr. Marsico, Dr. Jonesco informed him that he had soft tissue injuries again and that he had re-aggravated his injuries. Dr. Jonesco prescribed pain medications and physical therapy. Dr. Jonesco testified that at the visit, Mr. Marsico complained of neck pain, left arm pain, right elbow pain, low mid back pain, and upper thoracic discomfort. Dr. Jonesco concluded that Mr. Marsico "aggravated his flexion-extension injury of the cervical spine. * * * [H]e aggravated both rotator cuffs and probably some age-related degenerative disease in both shoulders." Dr. Jonesco believed that the cause of those conditions was the May 20, 2010 car accident. Dr. Jonesco ordered pain medication and physical therapy.

{¶40} Dr. Jonesco testified that, in forming his opinion, he was unaware that, on April 28, 2010, only weeks before the car accident involving Ms. Burns, Mr. Marsico was seen by a doctor at the Veterans Administration ("VA") for complaints to his right shoulder. Mr. Marsico admitted during his testimony at trial that during his deposition he indicated that he had not seen a doctor for his right shoulder between the 1990s and the accident with Ms. Burns. At trial, he maintained that he simply forgot about the April 28, 2010 visit. The VA records indicated that, at the April 28, 2010 visit, Mr. Marsico presented with right shoulder pain that he had for approximately two months and also complained of low back pain. Mr. Marsico indicated a pain level of 8/10. At that time Mr. Marsico was prescribed pain medication and a course of physical therapy. Upon reviewing those records, Dr. Jonesco agreed that, Mr. Marsico on April 28, 2010, was complaining of pain in the same shoulder he later attributed to the accident with Ms. Burns. Dr. Jonesco also acknowledged that the treatment plan proposed by the VA doctor was very similar to the treatment plan proposed by Dr. Jonesco on May 21, 2010, following the car accident with Ms. Burns. Given this new information, Dr. Jonesco agreed that he had no way of knowing whether the right shoulder pain Mr. Marsico presented with on May 21, 2010, was any

different than the pain Mr. Marsico presented with on April 28, 2010. Dr. Jonesco also agreed that there was no scientific way to determine, based on his history of medical problems, how much, if any, the May 2010 accident contributed to Mr. Marsico's condition. Nonetheless, Dr. Jonesco did conclude that the three accidents were "a direct cause of aggravating cervical, thoracic, lumbosacral spine, as well as both rotator cuff injuries."

{¶41} Dr. Martinez, as noted above, testified that, when he examined Mr. Marsico in December 2010, Mr. Marsico did not report that he had been in two other car accidents or indicate that he was having any problems with his right shoulder. In fact, in conducting the independent medical evaluation of Mr. Marsico in December 2010, Dr. Martinez found no clinical signs of any injury to Mr. Marsico's right shoulder. Mr. Marsico was, at that time, able to flex, abduct, rotate, and extend his right shoulder in a normal fashion

{¶42} In April 2011, Dr. Zanotti performed surgery on Mr. Marsico's right shoulder due to continued difficulties Mr. Marsico reported with that shoulder. Dr. Zanotti concluded that the right shoulder had arthritis, some tearing of the rotator cuff, and a labral tear. However, due to the length of time between the May 20, 2010 accident and when Mr. Marsico came to see Dr. Zanotti in April 2011, Dr. Zanotti had no opinion as to what effect the May 20, 2010 accident had on Mr. Marsico's shoulder. When discussing the issue further, he stated:

> Well, I treated him for his left shoulder shortly after his accident on the left side, and I have no problem stating that in my opinion that the left shoulder is directly related to the car accident. So he knows I'm a shoulder surgeon. He's been seeing me. He gets in two accidents with his right shoulder, yet I don't see him for well, a year, or almost eight, nine months. So, I don't have any way of correlating those injuries to his accident.

{¶43} Based on the foregoing, there was evidence in the record from which a jury could conclude that Mr. Marsico failed to meet his burden of establishing that the negligence of Ms. Burns did proximately cause Mr. Marsico injury. The jury heard Dr. Jonesco opine that the

collision aggravated some of Mr. Marsico's pre-existing injuries. However, it also considered evidence from which it could reasonably conclude that Mr. Marsico did not disclose all relevant information to his treating physician and thus the opinion of his treating physician could be inaccurate. A jury could therefore conclude that Mr. Marsico failed to meet his burden of proof in demonstrating causation. Further, the jury also had before it evidence that the collision caused only minor damage to Mr. Marsico's vehicle and that the collision was not even severe enough to cause Mr. Marsico or Ms. Burns to seek medical treatment that day. Given the record, there was evidence from which the jury could have found either for Mr. Marsico or for Ms. Burns on the issue of causation. Accordingly, the trial court properly denied Mr. Marsico's motion for directed verdict and motion for judgment notwithstanding the verdict. Mr. Marsico's fifth and tenth assignments of error are overruled.

ASSIGNMENT OF ERROR VI

THE TRIAL COURT ERRED BY DENYING MR. MARSICO'S MOTION FOR A DIRECTED VERDICT AGAINST MR. WHELCHEL AND SCHIEMANN INVESTMENTS, INC. ON THE ISSUE OF CAUSATION.

ASSIGNMENT OF ERROR XII

THE TRIAL COURT ERRED WHEN IT DENIED MR. MARSICO'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AGAINST MR. WHELCHEL AND SCHIEMANN INVESTMENTS, INC.

{¶44} Mr. Marsico asserts in his sixth assignment of error that the trial court erred in denying his motion for a directed verdict against Mr. Whelchel and Schiemann Investments, Inc. on the issue of causation. Mr. Marsico asserts in his twelfth assignment of error that the trial court erred in denying his motion for judgment notwithstanding the verdict. Mr. Marsico maintains that the evidence only supported the conclusion that the negligence of Mr. Whelchel and Schiemann Investments, Inc. proximately caused him some injury. We do not agree.

{¶45} On Friday October 22, 2010, around 7 p.m., Mr. Marsico was on State Route 611 in his Toyota 4Runner in a turn lane waiting to turn when he was struck from behind by a tractor trailer driven by Mr. Whelchel. As Mr. Marsico described it, "suddenly [he] was struck from behind, * * * glass flying everywhere, [he] was flying back and forth in the car with [his] head going back and forth[.]" "[He] hurt [his] head, [his] neck, [his] right shoulder, and [his] back again." He described his right hand being on the steering wheel at the time of the collision. Officer Chris Barton testified that Mr. Whelchel reported going 5 m.p.h. at the time of the collision. The officer reported that Mr. Marsico's vehicle suffered rear end damage and possibly a broken window and that the tractor trailer had some front end damage. The damages were repaired for approximately $3500.00. Neither party had any visible injuries. Mr. Marsico reported possible back injuries but declined to be transported to the hospital. Neither vehicle required a tow. Photographs of the damage were shown to the jury. Mr. Whelchel testified that Mr. Marsico indicated he was fine immediately following the accident.

{¶46} Mr. Marsico went to the doctor on October 25, 2010, to seek treatment for the pain in his right shoulder and back. The doctor, who was an associate of Dr. Jonesco, prescribed pain medication and physical therapy. Mr. Marsico indicated that the pain did not resolve and so he returned to see Dr. Jonesco in February 2011. Dr. Jonesco reported that Mr. Marsico suffered from "a myriad of musculoskeletal soft tissue trauma, the spine, shoulder, cervical spine, with secondary myositits, myofascitis and somatic dysfunction, as well as bilateral rotator cuff injury, impingement syndrome of the right shoulder." Dr. Jonesco attributed those conditions to the October 2010 car accident. Dr. Jonesco thereafter referred Mr. Marsico to a chronic pain specialist. Ultimately, an MRI of Mr. Marsico's right shoulder was taken which revealed a torn rotator cuff and torn labrum. As noted above, Mr. Marsico saw Dr. Zanotti in April 2011. Dr.

Zanotti recommended surgery to correct the issues with Mr. Marsico's right shoulder, which was performed later that month. Dr. Jonesco saw Mr. Marsico again in October 2011 for ongoing pain issues and at that point Dr. Jonesco diagnosed Mr. Marsico with post-traumatic fibromyalgia, which he attributed to being caused by the summation of the three accidents.

{¶47} As noted above, however, in forming his opinion, Dr. Jonesco was not aware that, in April 2010, Mr. Marsico presented to the VA with right shoulder pain of a two-month duration and chronic low back pain or that the treatment for that condition was similar to the treatment initially recommended for Mr. Marsico in both May 2010 and October 2010 by Dr. Jonesco and/or his associate.

{¶48} Also as discussed previously, Dr. Zanotti formed no opinion as to whether the October 2010 car accident caused Mr. Marsico's shoulder injuries due to the lapse in time between the car accident and when Dr. Zanotti saw Mr. Marsico in April 2011. Finally, we again note that Mr. Marsico neglected to inform Dr. Martinez of either the May 2010 or the October 2010 car accidents and did not complain of right shoulder pain at the December 2010 independent medical evaluation. At that evaluation, Mr. Marsico was able to flex, extend, abduct, and rotate his right shoulder in a normal fashion.

{¶49} Given the foregoing, we conclude there was evidence in the record which would allow a jury to reasonably find that Mr. Marsico did not sustain his burden in proving that Mr. Whelchel's negligence did proximately cause an injury to Mr. Marsico. Mr. Marsico presented evidence that his vehicle suffered more damage in the October 22, 2010 accident than in the other two accidents, although the accident was still, by all accounts a low speed collision. Notwithstanding the increased damage, Mr. Marsico's vehicle did not require a tow, and Mr. Marsico did not seek medical treatment until October 25, 2010. There was evidence that Mr.

Marsico failed to provide a complete and accurate history to the medical experts, and the jury could have found the opinions of the medical experts were not complete or accurate. The jury thereby could have found that Mr. Marsico did not meet his burden. Based on the foregoing and given the totality of the evidence at trial, the issue of whether Mr. Whelchel's negligence proximately caused Mr. Marsico any injury was a question for the jury to resolve. The trial court did not err in denying Mr. Marsico's motion for a directed verdict or his motion for judgment notwithstanding the verdict. Mr. Marsico's sixth and twelfth assignments of error are overruled.

ASSIGNMENT OF ERROR IX

THE TRIAL COURT ERRED WHEN IT DENIED MR. MARSICO'S MOTION FOR A NEW TRIAL AGAINST MR. SKRZYPEK, AS THE VERDICT FOR MR. SKRZYPEK WAS RENDERED UNDER THE INFLUENCE OF PASSION OR PREJUDICE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

ASSIGNMENT OF ERROR XI

THE TRIAL COURT ERRED WHEN IT DENIED MR. MARSICO'S MOTION FOR A NEW TRIAL AGAINST MS. BURNS, AS THE VERDICT FOR MS. BURNS WAS RENDERED UNDER THE INFLUENCE OF PASSION OR PREJUDICE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

ASSIGNMENT OF ERROR XIII

THE TRIAL COURT ERRED WHEN IT DENIED MR. MARSICO'S MOTION FOR A NEW TRIAL AGAINST MR. WHELCHEL AND SCHIEMANN INVESTMENTS, INC., AS THE VERDICTS FOR MR. WHELCHEL AND SCHIEMANN INVESTMENTS, INC. WERE RENDERED UNDER THE INFLUENCE OF PASSION OR PREJUDICE AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶50} Mr. Marsico asserts in his ninth, eleventh, and thirteenth assignments of error that the trial court erred in denying his motion for new trial. He asserts both that the verdict was against the manifest weight of the evidence and that it was rendered under the influence of passion or prejudice. We do not agree.

{¶51}  Mr. Marsico sought a new trial pursuant to Civ.R. 59(A)(4)[3] and (A)(6).  Civ.R. 59 provides in pertinent part that,

> [a] new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds: * * * Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice; [or] * * * The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case[.]

Civ.R. 59(A)(4), (6).  "This Court's standard of review of an order denying a motion for a new trial depends upon the grounds of the motion.  Depending upon the basis of the motion for a new trial, this Court will review a trial court's decision to grant or deny the motion under either a de novo or an abuse of discretion standard of review."  (Internal quotations and citation omitted.) *Jackovic,* 2013-Ohio-2520, at ¶ 17.  In the case before us, Mr. Marsico does not raise an issue of law but instead challenges the propriety of the trial court's exercise of its discretion in denying his motions.  Accordingly, the trial court's decision in this matter will be reviewed for an abuse of discretion. *See Dragway 42, L.L.C.,* 2010-Ohio-4657, at ¶ 34; *Schottenstein, Zox & Dunn Co., L.P.A. v. Reineke,* 9th Dist. Medina No. 10CA0138-M, 2011-Ohio-6201, ¶ 11.  An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable."  (Internal quotations and citations omitted.)  *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

---

[3] We question the applicability of Civ.R. 59(A)(4) to Mr. Marsico's case.  The jury rendered a verdict for the Defendants.  Accordingly, it would be illogical for the jury to award Mr. Marsico any damages.  Nonetheless, we note that other courts have applied this portion of the rule to factually similar cases. *See, e.g., Pytel v. Crenshaw,* 2d Dist. Montgomery No. 25487, 2013-Ohio-3552, ¶ 8, ¶ 26.  As the parties do not assert that Civ.R. 59(A)(4) has no application here, we will analyze the merits of the argument.

**{¶52}** "'An appellate court reviewing whether a trial court abused its discretion in ruling on a motion for a new trial pursuant to Civ.R. 59(A)(4) must consider (1) the amount of the verdict, and (2) whether the jury considered improper evidence, improper argument by counsel, or other inappropriate conduct which had an influence on the jury.'" *Dragway 42, L.L.C.* at ¶ 35, quoting *Pena v. Northeast Ohio Emergency Affiliates, Inc.,* 108 Ohio App.3d 96, 104, (9th Dist.1995). "To support a finding of passion or prejudice, it must be demonstrated that the jury's assessment of the damages was so overwhelmingly disproportionate as to shock reasonable sensibilities." (Internal quotations and citation omitted.) *Dragway 42, L.L.C.* at ¶ 35.

**Civ.R. 59(A)(4)**

**{¶53}** Mr. Marsico first asserts that the presentation of Mr. Marsico's deposition testimony during opening statement improperly influenced the jury. We note that Mr. Marsico did not raise this argument in his motion for new trial and only raised it in his reply brief in the trial court.

**{¶54}** As a general rule, new arguments should not be first raised in a reply brief as it prevents the opposing side the opportunity to respond to the argument. *See Smith v. Ray Esser & Sons, Inc.*, 9th Dist. Lorain No. 10CA009798, 2011-Ohio-1529, ¶ 15. Moreover, the Local Rules of the Lorain County Court of Common Pleas do not specifically authorize the filing of reply briefs. *See* Loc.R. 9 of the Court of Common Pleas of Lorain County, General Division. Given the foregoing and the fact that there is nothing in the trial court's entry that indicates it considered this argument, we cannot say that the trial court abused its discretion in denying Mr. Marsico's motion on this basis.

**{¶55}** As Mr. Marsico has not advanced any other argument explaining how the trial court erred in denying his motion for new trial pursuant to Civ.R. 59(A)(4), we overrule this portion of his argument.

**Civ.R. 59(A)(6)**

> When considering a Civ.R. 59(A)(6) motion for a new trial, a trial court must weigh the evidence and pass on the credibility of the witnesses. [Yet], the trial court assesses the weight and credibility in a more limited sense than would a jury; the court is to determine, in light of its broad discretion, whether a manifest injustice has occurred. The job of the appellate court is to review whether the trial court abused its discretion in making this determination. Absent some indication that the trial court was unreasonable, arbitrary or unconscionable in exercising its discretion, the judgment of the trial court will not be disturbed.

(Internal quotations and citations omitted.) *Reineke,* 2011-Ohio-6201, at ¶ 11.

**{¶56}** Mr. Marsico asserts that the trial court erred in denying his motion for a new trial on the basis that the verdict was against the manifest weight of the evidence because the jury disregarded uncontroverted evidence that Mr. Marsico sustained some injury and suffered some damage as a result of the negligence of the Defendants.

**{¶57}** We have previously concluded above in discussing the assignments of error with respect the denial of Mr. Marsico's motions for directed verdict and judgment notwithstanding the verdict that whether the accidents proximately caused Mr. Marsico any damage or injury was a jury question. Thus, the evidence was not uncontroverted. *See Holub v. Hagen,* 9th Dist. Summit No. 15987, 1993 WL 473827, *4 (Nov. 10, 1993). There was substantial evidence presented which called into question Mr. Marsico's credibility under circumstances where the medical experts necessarily relied upon the history relayed by Mr. Marsico in forming their opinions. There was evidence that Mr. Marsico did not report all relevant prior injuries and conditions to the medical experts. There was evidence that, in forming their opinions, the medical experts were unaware of certain information that would have been important in forming

their opinions. Additionally, there was evidence from which a jury could conclude that Mr. Marsico's perception and description of the severity of the accidents did not match the photographic evidence and from which a jury could reasonably conclude that the accidents were not severe enough to cause the resultant injuries alleged by Mr. Marsico.

**{¶58}** Given our review of the record before us, we cannot say that the trial court abused its discretion in denying Mr. Marsico's motions. We overrule Mr. Marsico's ninth, eleventh, and thirteenth assignments of error.

### III.

**{¶59}** In light of the foregoing, we affirm the judgment of the Lorain County Court of Common Pleas.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

HENSAL, J.
WHITMORE, J.
CONCUR.

APPEARANCES:

MARK E. STEPHENSON, Attorney at Law, for Appellant.

TERRENCE J. KENNEALLY, Attorney at Law, for Appellee.

JAMES P. CARRABINE, Attorney at Law, for Appellee.

MEGAN D. STRICKER, Attorney at Law, for Appellee.